PLEASANT VALLEY PROMENADE, a California limited partnership, Plaintiff-Appellant v. LECHMERE, INC., LECHMERE REALTY LIMITED PARTNERSHIP, and AEW PARTNERS, L.P., Defendant-Appellees/Cross-Appellants

No. 9310SC1016 and 9410SC49

(Filed 7 November 1995)

## 1. Conspiracy § 11 (NCI4th); Unfair Competition or Trade Practices § 37 (NCI4th)— breach of shopping center agreement—insufficiency of evidence of misconduct

In an action arising out of the closing of a Lechmere Department Store at Pleasant Valley Promenade Shopping Center, the trial court did not err in directing verdict for defendant AEW on plaintiff's civil conspiracy, tortious interference with contract, and unfair trade practices claims where there was insufficient evidence showing an agreement between AEW and Lechmere to commit a wrongful act; the evidence instead showed the closing of the Lechmere store was an operational decision made by Lechmere; there was no evidence indicating AEW induced Lechmere to breach its agreement with Pleasant Valley to operate the store for seven years; there was no evidence of bad motive; AEW never had a business relationship with plaintiff; and plaintiff presented no evidence showing that AEW acted contrary to established business principles or in a deceptive, immoral, unethical, oppressive, or unscrupulous manner.

**Am Jur 2d, Conspiracy §§ 68, 69; Consumer and Borrower Protection §§ 302 et seq.; Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

## 2. Contracts § 148 (NCI4th)— defendant not party to shopping center agreement—no breach of contract or fraud

In an action arising out of the closing of a Lechmere store in a shopping center, the trial court did not err in directing verdicts on plaintiff's breach of contract, fraud, and unfair trade practices claims in favor of defendant Lechmere Realty Limited Partnership, since Lechmere Realty Limited Partnership was not bound by plaintiff's agreement with defendant Lechmere, Inc. and therefore could not breach the terms of the covenant to operate the store for seven years; as support for its fraud and unfair trade practices claims, plaintiff relied upon evidence adduced to support similar claims against defendant Lechmere, Inc.; plaintiff failed to establish defendant Lechmere, Inc. committed fraud or

unfair trade practices; and plaintiff offered no evidence demonstrating it detrimentally relied on any statements made by Lechmere Realty Limited Partnership.

**Am Jur 2d, Contracts §§ 716-748.**

**3. Pleadings § 61 (NCI4th)— denial of summary judgment— no automatic bar to sanctions**

The denial of a motion for summary judgment is not an automatic bar to imposition of Rule 11 sanctions.

**Am Jur 2d, Pleading §§ 236, 237.**

**4. Courts § 84 (NCI4th)— summary judgment denied by one judge—ruling as matter of law by another judge—first judge not overruled by second**

There was no merit to defendant Lechmere's contention that the trial court erred in ruling as a matter of law that Lechmere breached the parties' agreement because another judge had previously denied Lechmere's motion for partial summary judgment on the issue of breach of the agreement, concluding there was a genuine issue as to material fact, since the trial court's ruling was most analogous to directing a verdict on the question of Lechmere's liability under the operating covenants of the agreement, rather than reconsidering the first judge's decision to deny summary judgment.

**Am Jur 2d, Judges §§ 37-43.**

**5. Contracts § 70 (NCI4th)— unambiguous language in covenant—parties' intent as question of law—failure to comply with restrictive covenant**

Where the language of the parties' covenant was unambiguous, the parties' intent constituted a question of law for the court. The trial court in this case properly construed the language of a contract to require Lechmere to operate its store within plaintiff's shopping center for the seven-year contract term or to require a Lechmere store or store having the trade name used by Lechmere in substantially all its southeastern stores to be operated within the shopping center for the entire contract term, and the court on appeal concludes that Lechmere did not comply with the requirements of this covenant.

**Am Jur 2d, Contracts §§ 350-353, 370.**

PLEASANT VALLEY PROMENADE v. LECHMERE, INC.

[120 N.C. App. 650 (1995)]

**6. Fraud, Deceit, and Misrepresentation § 18 (NCI4th)— shopping center anchor store closed—misrepresentation about closing—no reliance on misrepresentation—insufficiency of evidence of fraud**

In an action arising out of the closing of a Lechmere store in plaintiff's shopping center, the trial court did not err in directing a verdict in favor of defendant Lechmere on plaintiff's fraud and unfair and deceptive trade practices claims where the evidence tended to show that defendant intentionally misrepresented its plan to close the Raleigh store by assuring plaintiff through letters and telephone conversations that their agreement to operate the store for seven years would be honored; plaintiff acted or refrained from acting in a certain manner due to defendant's representations; but the evidence showing that plaintiff was aware of the fact that defendant planned to close its store and was seeking a suitable replacement tenant belied other testimony that plaintiff actually relied upon defendant's misrepresentations.

**Am Jur 2d, Fraud and Deceit §§ 223 et seq.**

**Misrepresentations as to financial condition or credit of third person as actionable by one extending credit in reliance thereon. 32 ALR2d 184.**

**7. Damages § 35 (NCI4th); Contracts § 163 (NCI4th)— breach of contract to operate anchor store in shopping center—diminished market value recoverable**

Diminished market value of a shopping center is recoverable for an anchor store's breach of its contract to operate its store in the shopping center for a specified time.

**Am Jur 2d, Damages §§ 401 et seq.**

**Measure of damages for conversion or loss of, or damage to, personal property having no market value. 12 ALR2d 902.**

**Recovery of value of use of property wrongfully attached. 45 ALR2d 1221.**

**8. Damages § 96 (NCI4th); Contracts § 163 (NCI4th)— breach of contract to operate anchor store in shopping center—diminished market value—special damages**

Any damages suffered by plaintiff as a result of defendant's breach of the parties' contract for operation of an anchor store in

PLEASANT VALLEY PROMENADE v. LECHMERE, INC.

[120 N.C. App. 650 (1995)]

a shopping center were special damages. To recover special damages, plaintiff had to demonstrate it had suffered damages which could reasonably be supposed to have been within the contemplation of the parties when the contract was made; therefore, since the jury was not presented with the question whether defendant did in fact foresee or had reason to foresee the injury that plaintiff suffered, its $8.0 million award of general damages could not stand.

**Am Jur 2d, Damages §§ 831 et seq.**

Judge GREENE concurring.

Appeal by plaintiff from judgment entered 30 December 1992 by Judge Henry V. Barnette, Jr., in Wake County Superior Court. Heard in the Court of Appeals 5 April 1995.

*Parker, Poe, Adams & Bernstein, by Fred T. Lowrance and John J. Butler, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, by Pressly M. Millen, and Young, Moore, Henderson & Alvis, P.A., by Jerry S. Alvis, for defendant-appellee/cross-appellant Lechmere, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Michael E. Weddington and Susan M. Parker, for defendant-appellee/cross-appellant Lechmere Realty Limited Partnership.*

*Maupin Taylor Ellis & Adams, P.A., by John C. Cooke and Ronald R. Rogers for defendant-appellee/cross-appellant AEW Partners, L.P.*

MARTIN, MARK D., Judge.

This case involves an appeal by plaintiff Pleasant Valley Promenade (Pleasant Valley), and cross-appeals by defendants Lechmere, Inc. (Lechmere), Lechmere Realty Limited Partnership (LRLP), and AEW Partners, L.P. (AEW). The parties have presented numerous assignments of error for our consideration.

We consolidate the primary assignments of error into five issues—whether the trial court erred by: (1) directing verdicts in favor of AEW and LRLP on Pleasant Valley's fraud, unfair and deceptive trade practices, civil conspiracy, and tortious interference with contract claims; (2) excluding certain evidence offered at trial by

Pleasant Valley; (3) denying AEW's motion for attorney's fees and Rule 11 sanctions against Pleasant Valley; (4) ruling in favor of Pleasant Valley on the issue of Lechmere's liability for breach of contract during the pre-trial conference; and (5) granting Lechmere's motion for judgment notwithstanding the verdict.

After an exhaustive review of these questions, we reverse the trial court's entry of judgment notwithstanding the verdict, remand for reconsideration of AEW's motion for sanctions and a new trial on damages, and otherwise affirm the trial court's extensive rulings in all other respects.

This controversy arose out of the March 1990 closing of the Lechmere store at Pleasant Valley Promenade Shopping Center in Raleigh, North Carolina. The record indicates on 2 February 1987, Lechmere, a chain of department stores, entered into an Operation and Reciprocal Easement Agreement (the Agreement) with Schurgin Development (Schurgin), the developer of the Pleasant Valley Promenade Shopping Center (the Center). The Agreement contained restrictive covenants requiring Lechmere to open and operate a Lechmere store in the Center for a period of seven years. Before Lechmere entered the Agreement, Schurgin sold Lechmere the land on which its store was to be located. In April 1987 Schurgin transferred the Agreement and the Center, less the tract owned by Lechmere, to Pleasant Valley Partners, a limited partnership in which Schurgin was a general partner. In September 1987 the Lechmere store opened.

In the fall of 1989, Pleasant Valley began hearing rumors Lechmere's parent corporation planned to sell Lechmere to a group consisting of AEW and selected members of Lechmere's management. Lechmere responded to Pleasant Valley's repeated inquiries into the plans for the Raleigh store by affirming its intention to honor the Agreement.

On 26 September 1989 Lechmere hired the Sam Nassi Company, a California corporation, to plan the advertising, marketing, and sales promotions for the upcoming liquidation/clearance sales in its southeastern stores.

In late 1989 Lechmere's parent corporation, the Dayton-Hudson Corporation, sold Lechmere to a group including AEW. In conjunction with the sale, LRLP purchased from and immediately leased back to Lechmere the realty encompassing the Raleigh store. To finance the

purchase of the realty, LRLP obtained loans from AEW pursuant to a leveraged buy-out (LBO) agreement. In accordance with the LBO, Lechmere was to sell all of its southeastern stores, including the Raleigh store, and the funds would be used to pay AEW's fees and repay AEW's loans. Subsequently, Lechmere began to look for new retail tenants for its stores.

In November 1989 Pleasant Valley borrowed $7.0 million from Chase Manhattan Bank for site improvements, leasing operations, and interest payments.

On 20 November 1989 Pleasant Valley received notice of the "sell and lease back" arrangement between Lechmere and LRLP. On 22 February 1990 Lechmere notified Pleasant Valley it intended to close the Raleigh store and lease the space to Phar-Mor, a discount pharmacy chain. Six days later LRLP terminated its lease with Lechmere and executed a lease with Phar-Mor, thereby transferring the possessory interest of the space within the Center to Phar-Mor. Lechmere closed on 9 March 1990.

Pleasant Valley filed its complaint on 14 March 1990 seeking recovery from defendants Lechmere and LRLP for breach of contract, fraud, and unfair trade practices. The complaint also named AEW as defendant. On 18 May 1990 Lechmere and LRLP filed an answer and counterclaim against Pleasant Valley. Pleasant Valley amended the complaint on 26 September 1991 to add claims against AEW for tortious interference with contract, civil conspiracy, unfair trade practices, and aiding and abetting.

The action was tried during the 9 November 1992 Session of Wake County General Court of Justice, Superior Court Division. At the pretrial conference the trial court determined the restrictive covenants contained in the Agreement between Schurgin and Lechmere ran with the land and, therefore, Pleasant Valley could enforce the covenants in the Agreement. The trial court also ruled Lechmere breached the Agreement requiring Lechmere to operate a store at the Center for seven years.

On 2 December 1992, at the close of Pleasant Valley's evidence, the trial court directed verdicts in favor of LRLP and AEW on all of Pleasant Valley's claims and granted a partial directed verdict in favor of Lechmere on Pleasant Valley's fraud and unfair and deceptive trade practices causes of action. Thus, the trial proceeded solely on the issue of damages arising from Lechmere's breach of the Agreement.

On 11 December 1992 the jury returned a verdict awarding Pleasant Valley $8.0 million in damages for Lechmere's breach of the Agreement. Lechmere moved for judgment notwithstanding the verdict, which the court granted on 30 December 1992. In setting aside the jury verdict, the trial court entered judgment against Lechmere for $1.00 in nominal damages, plus costs. At the conclusion of the trial, defendant AEW moved for attorney's fees, which the trial court denied. From this judgment Pleasant Valley appeals and AEW, LRLP, and Lechmere cross-appeal.

---

## PLEASANT VALLEY'S CLAIMS AGAINST AEW

[1] Pleasant Valley asserts AEW was inextricably involved in the breach of the Agreement, and thus the court erred in directing a verdict for AEW on plaintiff's civil conspiracy, tortious interference with contract, and unfair trade practices claims. In support of this contention, Pleasant Valley alleges: (1) AEW knew about the existence of the Agreement; (2) AEW was aware of a dispute over the Agreement; (3) AEW assisted in developing a plan to close the southeastern Lechmere stores and, specifically, to sell the inventory and real estate at the Raleigh location; (4) AEW participated in the lease to Phar-Mor; and (5) AEW received proceeds from the closing of the southeast stores.

When ruling on a motion for directed verdict, "the trial court must determine whether the evidence, when considered in the light most favorable to the nonmovant, is sufficient to take the case to the jury." *Southern Bell Telephone and Telegraph Co. v. West*, 100 N.C. App. 668, 670, 397 S.E.2d 765, 766 (1990), *aff'd*, 328 N.C. 566, 402 S.E.2d 409 (1991). Further, "[t]he testimony of plaintiff's witnesses must be accepted at face value" because credibility is an issue for the jury. *McCollum v. Grove Mfg. Co.*, 58 N.C. App. 283, 286, 293 S.E.2d 632, 635 (1982), *aff'd*, 307 N.C. 695, 300 S.E.2d 374 (1983). "If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for directed verdict should be denied." *Snead v. Holloman*, 101 N.C. App. 462, 464, 400 S.E.2d 91, 92 (1991).

On appeal, the scope of review is limited to those grounds asserted by the moving party before the trial court. *Southern Bell*, 100 N.C. App. at 670, 397 S.E.2d at 766. Nonetheless, the reviewing court is confronted with the identical task as the trial court—"to determine whether the evidence, when considered in the light most favorable to the nonmovant, was sufficient to have been submitted to the jury."

*Harshbarger v. Murphy,* 90 N.C. App. 393, 395, 368 S.E.2d 450, 451 (1988).

### A.

A civil conspiracy requires: (1) an agreement between two or more persons to do a wrongful act; (2) an overt act committed in furtherance of the agreement; and (3) damage to the plaintiff. *Nye v. Oates,* 96 N.C. App. 343, 347, 385 S.E.2d 529, 531-532 (1989). Direct evidence of a conspiracy agreement is not necessary and often does not exist. *State v. Whiteside,* 204 N.C. 710, 712-713, 169 S.E. 711, 712 (1933). However, to submit the case to the jury, the circumstantial evidence must amount to more than mere suspicion or conjecture. *Dickens v. Puryear,* 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981). We do not find sufficient evidence showing an agreement between AEW and Lechmere to commit a wrongful act. Rather, the evidence shows the closing of the Lechmere store was an operational decision made by Lechmere.

### B.

To support a tortious interference with contract claim, Pleasant Valley must have presented evidence showing: (1) the Agreement was a valid contract between Pleasant Valley and Lechmere; (2) AEW had knowledge of the Agreement; (3) AEW intentionally induced Lechmere not to perform its obligations to Pleasant Valley under the Agreement; (4) AEW's actions were not justified by legitimate business interests; and (5) AEW's actions caused Pleasant Valley to suffer actual damages. *See Childress v. Abeles,* 240 N.C. 667, 674, 84 S.E.2d 176, 181-182 (1954), *reh'g denied,* 242 N.C. 123, 86 S.E.2d 916 (1955). Plaintiff refers to no evidence, and we find no evidence, indicating AEW induced Lechmere to breach the Agreement. We also discern no evidence of bad motive. *See Cameron v. New Hanover Memorial Hospital,* 58 N.C. App. 414, 439, 293 S.E.2d 901, 916, *disc. review denied and appeal dismissed,* 307 N.C. 127, 297 S.E.2d 399 (1982) ("bad motive is the gist of the [tortious interference] action").

### C.

Chapter 75 of our General Statutes prohibits unfair acts which undermine ethical standards and good faith between persons engaged in business dealings. *McDonald v. Scarboro,* 91 N.C. App. 13, 18, 370 S.E.2d 680, 683, *disc. review denied,* 323 N.C. 476, 373 S.E.2d 864 (1988). In support of its unfair trade practices claim, Pleasant Valley first relies upon the factual allegations it asserts to support its civil

conspiracy and tortious interference with contract claims. We summarily dismiss this contention since we have already determined Pleasant Valley failed to introduce sufficient evidence at trial to overcome AEW's motion for directed verdict on those claims.

Pleasant Valley also contends "the totality of AEW's conduct with respect to the 'busted' Agreement independently supports the Chapter 75 claim against AEW." We note, however, AEW never had a business relationship with Pleasant Valley. Further, Pleasant Valley presented no evidence showing AEW acted contrary to established business principles or in a deceptive, immoral, unethical, oppressive, or unscrupulous manner.

Therefore, we find no merit in Pleasant Valley's claims for civil conspiracy, tortious interference with contract, or unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. Accordingly, we affirm the trial court's grant of a directed verdict in favor of AEW as to all claims.

### PLEASANT VALLEY'S CLAIMS AGAINST LRLP

[2] Pleasant Valley submits the trial court erred in directing verdicts on its breach of contract, fraud, and unfair trade practices claims in favor of defendant LRLP.

### A.

Pleasant Valley suggests LRLP was liable for Lechmere's breach of the Agreement since LRLP purchased the store and leased it back to Lechmere. The evidence clearly indicates LRLP was not bound by the Agreement. Therefore, LRLP could not breach the terms of the covenant. Accordingly, we reject this claim.

### B.

As support for its fraud and unfair trade practices claims, Pleasant Valley relies upon evidence adduced to support its fraud and unfair trade practice claims against Lechmere. We dismiss this argument because we ultimately conclude Pleasant Valley failed to establish Lechmere committed fraud or unfair trade practices. Further, addressing the fraud claim, we note Pleasant Valley offered no evidence demonstrating it detrimentally relied on any statements made by LRLP. Accordingly, we conclude the trial court properly directed a verdict in favor of LRLP on Pleasant Valley's fraud and unfair trade practices causes of action.

**PLEASANT VALLEY PROMENADE v. LECHMERE, INC.**

[120 N.C. App. 650 (1995)]

## PLEASANT VALLEY'S EVIDENTIARY CLAIMS

Pleasant Valley asserts the trial court erred in excluding certain deposition testimony and exhibits from evidence.

We conclude Pleasant Valley abandoned its allegation the trial court improperly excluded exhibits from evidence because it failed to cite any authority or offer any support for this contention. *Byrne v. Bordeaux*, 85 N.C. App. 262, 265, 354 S.E.2d 277, 279 (1987).

To be admissible at trial, the deposition of an unavailable non-party witness must meet the requirements of both N.C.R. Civ. P. 32 and N.C.R. Evid. 804(b)(1). *Investors Title Insurance Co. v. Herzig*, 330 N.C. 681, 690-691, 413 S.E.2d 268, 273 (1992). Rule 32 generally allows the use of an unavailable witness' deposition. N.C. Gen. Stat. § 1A-1, Rule 32 (1990). Rule 804(b)(1) does not allow an unavailable witness' deposition to be introduced at trial, however, unless the party against whom such testimony is offered had the "opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." N.C. Gen. Stat. § 8C-1, Rule 804(b)(1) (1992).

At the time Pleasant Valley deposed Rubin and DeSimone, Pleasant Valley was not seeking damages from AEW. Thus, AEW had no motive to develop testimony to rebut a non-existent damages claim. At trial, however, Pleasant Valley amended its complaint to assert damages against AEW. Accordingly, we hold the trial court properly excluded the deposition testimony under Rule 804(b)(1).

## AEW'S CROSS-APPEAL

[3] AEW contends the trial court erred in denying its motion for attorney's fees and Rule 11 sanctions against Pleasant Valley.

Our review of the record indicates the trial court may have been uncertain as to whether AEW's motion for Rule 11 sanctions survived the denial of AEW's motion for summary judgment on the underlying claims. The trial court's uncertainty is understandable as this Court recently considered, but did not decide, this precise question. *See Pugh v. Pugh*, 111 N.C. App. 118, 431 S.E.2d 873 (1993). After careful consideration of this question, we conclude the denial of a motion for summary judgment is not an automatic bar to imposition of Rule 11 sanctions. *Cf. Higgins v. Patton*, 102 N.C. App. 301, 305, 401 S.E.2d 854, 856 (1991), *overruled on other grounds, Bryson v. Sullivan*, 330 N.C. 664, 412 S.E.2d 327 (1992).

PLEASANT VALLEY PROMENADE v. LECHMERE, INC.

[120 N.C. App. 650 (1995)]

As noted by the United States Court of Appeals for the Ninth Circuit in *Matter of Yagman*:

> In some situations, liability under proper sanctioning authority will not be immediately apparent or may not be precisely and accurately discernible until a later time. For example, findings under Rule 11 occasionally cannot be made until after the evidentiary portion of the trial. <u>A claim may appear to raise legitimate and genuine issues before trial, even in the face of summary judgment challenges, but will be unmasked as not well-founded in fact after the claimant has presented his evidence.</u>

*Matter of Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986), *cert. denied, Real v. Yagman*, 484 U.S 963, 98 L. Ed. 2d 390 (1987) (emphasis added). We agree with the reasoning of the Court in *Matter of Yagman*.

We offer no opinion at this juncture as to whether sanctions are appropriate under the facts and circumstances of the present case. Rather, we remand to the trial court in the first instance for reconsideration of this question with knowledge the denial of a motion for summary judgment does not constitute an absolute bar to the imposition of Rule 11 sanctions.

### LECHMERE'S CROSS-APPEAL

Lechmere contends the trial court erred by ruling, as a matter of law, that it breached the Agreement.

### A.

[4] We agree with Lechmere's assertion that one trial judge "may not modify, overrule, or change the judgment . . . previously made in the same action." *Iverson v. TM One, Inc.*, 92 N.C. App. 161, 164, 374 S.E.2d 160, 162 (1988) (*quoting Smithwick v. Crutchfield*, 87 N.C. App. 374, 376, 361 S.E.2d 111, 113 (1987)). Accordingly, where one judge has denied a motion for summary judgment, another judge may not reconsider and grant summary judgment on the same issue. *Whitley's Electrical Service v. Walston*, 105 N.C. App. 609, 611, 414 S.E.2d 47, 48 (1992).

In the instant case, Judge Robert L. Farmer denied Lechmere's motion for partial summary judgment on the issue of breach of the Agreement concluding, "there [was] a genuine issue as to material fact." At the pre-trial conference, Judge Barnette ruled in favor of Pleasant Valley, as a matter of law, on the issue of breach of the

Agreement. In his ruling, Judge Barnette stated it was, "procedurally, the type of ruling that would normally be made at the directed verdict stage or at least during the charge conference. . . . I have made them preliminarily to trial, but procedurally that's where I think they would fit."

Having determined the meaning of the covenant was unambiguous, the parties' intent constituted a question of law for the court. *Runyon v. Paley*, 331 N.C. 293, 305, 416 S.E.2d 177, 186 (1992). Judge Barnette reviewed all evidence pertinent to this question (*i.e.*, the language of the operating covenants) prior to his ruling from the bench. Assuming the trial court correctly determined the intent of the operating covenant was unambiguous, no further evidence could be introduced during trial relevant to this inquiry. Perhaps most important, Judge Barnette considered the question of Lechmere's liability under the operating covenants pursuant to N.C.R. Civ. P. 50 at the close of plaintiff's evidence, and at the close of all the evidence, in each instance re-affirming his initial ruling.

Thus, assuming the trial court properly determined the intent of the operating covenant was unambiguous, we believe Judge Barnette's ruling was most analogous to directing a verdict on the question of Lechmere's liability under the operating covenants, rather than reconsidering Judge Farmer's decision to deny summary judgment.

## B.

[5] We next consider the substantive question of whether the trial court properly construed the Agreement. When interpreting the meaning of a covenant, the court must ascertain the parties' intent at the time they entered into the covenant. *Runyon*, 331 N.C. at 305, 416 S.E.2d at 186. The intention of the parties is determined by examining all of the covenants within the instrument. *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967). If the language of the covenant is unambiguous, as already indicated, the parties' intent constitutes a question of law for the court. *Runyon*, 331 N.C. at 305, 416 S.E.2d at 186.

Pursuant to Section 8.1 of the Agreement, Lechmere covenants and agrees with Developer:

> [T]hat it will open and thereafter operate, or cause to be opened and operated, a retail store under the trade name "Lechmere", or under such other name as it is doing business in

substantially all of its stores in the southeastern region, on or before September 1, 1987, and thereafter operate in not less than 60,000 square feet of Floor area for a period of seven consecutive (7) years from and after the date upon which it shall first open for business (the "operating period").

The hours of business, the number and types of departments to be operated in such store, the particular contents, wares and merchandise to be offered for sale and the services to be rendered, . . . and the manner of operating such store in every respect whatsoever shall be within the sole and absolute discretion of Lechmere. Provided, however, that Lechmere shall operate in a fashion comparable to a majority of its other stores in the southeastern region. Lechmere may operate a department or departments in its store in whole or in part by . . . tenants . . . . Provided, however, that said store shall present to the public the appearance of being operated as a single unified store.

Lechmere asserts the parties included: (1) the "cause . . . to be operated" language; and (2) the language allowing the use of a trade name other than "Lechmere," to enable another entity to fulfill Lechmere's operating obligations. We disagree.

We believe the language of the restrictive covenant unambiguously required either Lechmere operate its store within the Center for the seven-year contract term; or, alternatively, Lechmere cause a Lechmere store (or a store having the trade name used by Lechmere in substantially all of its southeastern stores prior to September 1, 1987) to be operated within the Center for the entire seven-year contract term. We conclude Lechmere did not comply with the requirements of this restrictive covenant.

We believe the trial court properly construed the Agreement, as a matter of law, in favor of Pleasant Valley. Therefore, we also reject Lechmere's contention Judge Barnette committed reversible error in ruling on this question at the pretrial conference. Accordingly, we find no merit in Lechmere's contention the trial court erred in determining Lechmere breached the Agreement with Pleasant Valley.

## Pleasant Valley's Appeal

Pleasant Valley presents two issues on appeal—whether the trial court erred: (1) in directing a verdict in favor of Lechmere on Pleasant Valley's fraud and unfair and deceptive trade practices

claims; and (2) in granting Lechmere's motion for judgment notwithstanding the verdict and setting aside the $8.0 million verdict.

### A.

**[6]** To recover for fraud, Pleasant Valley must present evidence tending to show (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) which was relied upon and which resulted in damages to the injured party. *Shaver v. Monroe Construction Co.*, 63 N.C. App. 605, 611, 306 S.E.2d 519, 523-524 (1983), *disc. review denied*, 310 N.C. 154, 311 S.E.2d 294 (1984).

After reviewing the evidence in the light most favorable to Pleasant Valley, we find Lechmere intentionally misrepresented its plan to close the Raleigh store by assuring Pleasant Valley, through letters and telephone conversations, the Agreement would be honored.

Actual reliance is demonstrated by evidence plaintiff acted or refrained from acting in a certain manner due to defendant's representations. *Libby Hill Seafood Restaurants, Inc. v. Owens*, 62 N.C. App. 695, 698, 303 S.E.2d 565, 568, *disc. review denied*, 309 N.C. 321, 307 S.E.2d 164 (1983). Moreover, plaintiff's reliance upon the false representations must be justified or reasonable. *Johnson v. Owens*, 263 N.C. 754, 757, 140 S.E.2d 311, 313 (1965).

Pleasant Valley directs our attention to Rosalind Schurgin's testimony. In her testimony, Rosalind Schurgin stated Pleasant Valley would not have incurred a $7.0 million loan in November 1989 to finance improvements at the shopping center if it had known Lechmere intended to abandon the Center.

However, Rosalind Schurgin's testimony admits Lechmere never represented it would occupy the premises for the term of the Agreement. Rosalind Schurgin also testified she was aware of newspaper articles in the *Raleigh News & Observer*, beginning 5 October 1989, stating Lechmere was trying to find a replacement tenant and close its store.

Further, on 25 October 1989, Pleasant Valley circulated internal documents which noted Lechmere was selling the store and Pleasant Valley might seek to buy the store. Another internal memo dated 26 October 1989 disclosed Pleasant Valley was aware of rumors Lechmere planned to close the store. Finally, in a letter dated 4

January 1990, the property manager for Schurgin told another tenant in the Center Lechmere was seeking a "suitable replacement."

Therefore, we hold Pleasant Valley's cognizance of this information belies Rosalind Schurgin's testimony that Pleasant Valley actually relied upon Lechmere's statements. Accordingly, we uphold the trial court's directed verdict in favor of Lechmere on plaintiff's fraud claim.

### B.

To establish a *prima facie* claim for unfair trade practices, the plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, N.C. Gen. Stat. § 75-1.1 (1994), and (3) the act proximately caused injury to the plaintiff. *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 184, 268 S.E.2d 271, 273-274 (1980) (plaintiff must also establish it "suffered actual injury as a proximate result of defendant['s] misrepresentations.").

Pleasant Valley did not sufficiently demonstrate actual reliance on Lechmere's misrepresentations and, therefore, failed to provide the requisite causal connection. Accordingly, we believe Pleasant Valley failed to prove Lechmere committed unfair and deceptive acts which proximately caused injury to Pleasant Valley.

### C.

We next examine Pleasant Valley's contention the trial court erred in granting Lechmere's motion for judgment notwithstanding the verdict.

When considering motions for judgment notwithstanding the verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure, the trial court applies the same standard as applied in considering motions for directed verdict. *Taylor v. Walker*, 320 N.C. 729, 733, 360 S.E.2d 796, 799 (1987). In deciding whether to set aside a verdict, the trial court must consider the evidence in the light most favorable to the non-moving party, giving it the benefit of all reasonable inferences to be drawn therefrom. *Id.* at 733-734, 360 S.E.2d at 799. A judgment notwithstanding the verdict is not proper unless it appears, as a matter of law, recovery cannot be had by a plaintiff upon any view of the facts which the evidence reasonably tends to establish. *Id.* at 734, 360 S.E.2d at 799. Accordingly, such a judgment is ordinarily not proper where plaintiff has presented evidence from which dam-

ages can be found when viewed in the light most favorable to the plaintiff. *Marina Food Assoc., Inc. v. Marina Restaurant, Inc.*, 100 N.C. App. 82, 90-91, 394 S.E.2d 824, 829, *disc. review denied*, 327 N.C. 636, 399 S.E.2d 328 (1990).

The trial court determined, and we agree, that Lechmere breached its Agreement with Pleasant Valley. It follows, therefore, any suit premised on this breach must sound in contract, and any damages must be recovered, if at all, under well settled principles of contract law.[1]

As a general rule, " '[f]or a breach of contract the injured party is entitled as compensation therefor to be placed, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed.' " *First Union Nat. Bank v. Naylor*, 102 N.C. App. 719, 725, 404 S.E.2d 161, 164 (1991) (*quoting Perfecting Serv. Co. v. Product Dev. & Sales Co.*, 259 N.C. 400, 415, 131 S.E.2d 9, 21 (1963)). *See also Fulcher v. Nelson*, 273 N.C. 221, 226, 159 S.E.2d 519, 523 (1968). The interest protected by this general rule is the non-breaching party's "expectation interest." *First Union*, 102 N.C. App. at 725, 404 S.E.2d at 164 (*citing* RESTATEMENT (SECOND) OF CONTRACTS § 344(a), comment a (1979)). Based on this expectation interest, an injured party has

a right to damages . . . measured by:

(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

(b) any other loss, including incidental or consequential loss, caused by the breach, less

(c) any cost or other loss that he has avoided by not having to perform.

*Id.* (*citing* RESTATEMENT (SECOND) OF CONTRACTS 347 (1979)); *Ward v. Zabady*, 85 N.C. App. 130, 135, 354 S.E.2d 369, 373, *disc. review denied*, 320 N.C. 177, 358 S.E.2d 71 (1987) (plaintiff may only recover

---

1. The parties do not dispute the covenants within the Agreement constitute restrictive covenants, as they "evince[] the intention of the parties that . . . [the land upon which the Lechmere store was located would] not be used other than in [the] designated manner for [the] designated purpose." PATRICK K. HETRICK, WEBSTER'S REAL ESTATE LAW IN NORTH CAROLINA, § 385 (3d ed. 1988). As such, "[t]he usual measure of damages for breach of a covenant, in accordance with the rule governing damages for breach of contracts generally, is compensation for actual loss suffered by reason of the breach." 20 AM. JUR. 2d *Covenants, Conditions, and Restrictions* § 28 (2d ed. 1965).

actual losses in breach of contract action). Simply stated, the amount of money which will completely indemnify the injured party is the true measure of damages. *Troitino v. Goodman*, 225 N.C. 406, 412, 35 S.E.2d 277, 281 (1945).

Pleasant Valley vigorously urged the trial court, and now urges on appeal, that the law of this State and other jurisdictions requires its damages be measured by diminution in market value—present worth of the property with the anchor store less the present worth of the property without the anchor store.

Lechmere opposes Pleasant Valley's measure of damages contending: (1) diminished market value is not the appropriate measure of damages; or, in the alternative, (2) diminished market value constitutes a special damage which Pleasant Valley failed to specifically plead in its complaint.

1.

**[7]** The initial question for determination, therefore, is whether diminished market value is recoverable in a breach of contract action arising out of an anchor store's breach of covenants with the shopping center in which it resides. This is a question of first impression for North Carolina courts.

North Carolina courts have routinely applied diminished market value as a measure of damages for physical harm to property. *See Robbins v. Trading Post, Inc.*, 251 N.C. 663, 666, 111 S.E.2d 884, 887 (1960) (breach of building or construction contracts); *Patrick v. Mitchell*, 44 N.C. App. 357, 359-360, 260 S.E.2d 809, 811 (1979) (breach of building or construction contracts); *Paris v. Aggregates, Inc.*, 271 N.C. 471, 484, 157 S.E.2d 131, 141 (1967) (damage to house allegedly caused by blasting operations); *Broadhurst v. Blythe Brothers Co.*, 220 N.C. 464, 469, 17 S.E.2d 646, 649 (1941) (damage to house allegedly caused by negligent excavations). In the seminal case of *Phillips v. Chesson*, 231 N.C. 566, 58 S.E.2d 343 (1950), our Supreme Court held diminished market value was not the appropriate measure of damages where defendant diverted water into plaintiff's lower lot by dumping clay on plaintiff's upper lot. The Court based its decision on the fact the injury to plaintiff's property was temporary, not permanent. *Id.* at 570-572, 58 S.E.2d at 347-348. Careful review of this precedent indicates diminished market value has been applied in cases involving permanent, physical damage to property.

PLEASANT VALLEY PROMENADE v. LECHMERE, INC.

[120 N.C. App. 650 (1995)]

The Fourth Circuit, however, has applied the diminished market value measure of damages to a breach of contract action arising under North Carolina law. *See United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985 (4th Cir.), *cert. denied*, 454 U.S. 1054, 70 L. Ed. 2d 590 (1981). In *United Roasters* Colgate entered into a manufacturing and distribution contract with United Roasters for "Bambeanos," a soybean product. Over two years later, in 1975, Colgate began to slowly phase out its participation in Bambeanos without informing United Roasters of its intention to discontinue the line. By May 1976, five months after the phaseout began, Colgate was no longer selling Bambeanos. As a result of Colgate's actions, United Roaster's opportunity to operate the Bambeanos product line was effectively foreclosed. At trial, the fair market value of the Bambeanos product line was found to be zero. Relying on this evidence, the jury awarded United Roasters $571,000 in damages based on the difference between the estimated value of Bambeanos before Colgate's abandonment and the present value of Bambeanos. *Id.* at 992-993.

On appeal, Colgate contended the award was improper because the jury applied the wrong standard. The Fourth Circuit stated:

> The plaintiff's expert offered a reasoned estimate of future profits and, by the application of a discount earnings method, arrived at an amount which, in his opinion, a willing buyer would be prepared to pay for the business. In none of this do we find any error . . . . By letting the business run out, Colgate had deprived the plaintiff of an opportunity to sell the business as a going concern or to develop it on its own.

*Id.* at 992.

Conceptually, *United Roasters* applied diminished market value to a breach of contract occurring during the initial "start-up period" of a business enterprise. As such, we believe *United Roasters* supports the proposition diminished market value is an appropriate contractual damages measure where the harm suffered will not otherwise be fully compensated. Similarly, the present case arises from a breach of contract occurring during the initial start-up or stabilization period of the Center. Further, Pleasant Valley alleges extensive damages when Lechmere abandoned the Center. Therefore, applying the rationale of *United Roasters*, we believe the genesis of diminished market value as primarily a property law measure does not automat-

ically foreclose its application to breach of contract under appropriate circumstances.

Examination of cases from other jurisdictions provides further support for application of diminished market value in appropriate breach of contract actions.

In *Hornwood v. Smith's Food King No. 1*, 807 P.2d 208 (Nev. 1991), the owners of a shopping center alleged the anchor tenant violated an operating covenant by moving out of and re-leasing its space to other tenants. The owners claimed they were entitled to recover the decline in value of the center due to the anchor tenant's breach. The Nevada Supreme Court concluded:

> [D]amages in this case should be assessed as the present worth of the property with the anchor tenant less the present worth of the property without the anchor tenant.

*Id.* at 212.

In so holding the Nevada Supreme Court relied on *Washington Trust Bank v. Circle K Corp.*, 546 P.2d 1249 (Wash. App.), *review denied*, 87 Wash.2d 1006 (1976). In *Washington Trust*, the lessor's trustee sought specific performance of a lease or, in the alternative, damages. The breach involved a single store not located in a shopping center. The Washington Court of Appeals dismissed the trustee's suit for specific performance because there was an adequate remedy at law available to the injured party. *Id.* at 1252. According to the Washington Court of Appeals, the remedy at law in their case was damages measured by "the difference between the present worth of the property with the lease less the present worth of the property without the lease." *Id.*

Lechmere contends the *Hornwood* court misapprehended the holding in *Washington Trust, supra,* thereby removing the *Hornwood* court's only precedent for applying diminished market value to breach of contract. In support of this proposition, Lechmere directs our attention to the Washington Supreme Court case of *Family Medical Bldg., Inc. v. Washington*, 702 P.2d 459 (Wash. 1985). In *Family Medical*, the landlord of a two-story building brought an action against the State Department of Social Services, and the Department of General Administration, for damages which resulted when the state allegedly breached a promise to renew an existing lease and to lease additional space in the landlord's building. The Washington Supreme Court held:

**PLEASANT VALLEY PROMENADE v. LECHMERE, INC.**

[120 N.C. App. 650 (1995)]

Generally, the measure of a lessor's damages resulting from a lessee's breach of a lease is the difference in the value of the property independent of the lease.

*Id.* at 464 (*citing Washington Trust Bank v. Circle K Corp.*, 15 Wash. App. 89, 93, 546 P.2d 1249, *review denied*, 87 Wash.2d 1006 (1976)). Based on the Washington Supreme Court's citation to *Washington Trust*, Lechmere contends the *Hornwood* Court misapplied its only cited authority, *Washington Trust Bank v. Circle K Corp.*, *supra.*

However, a more detailed reading of the *Family Medical* decision reveals the Washington Supreme Court went on to hold:

Additional damages which a lessor may recover for breach of a lease <u>may properly include consequential damages which flow from the breach and which could reasonably have been anticipated by the parties. The amount of damages should reflect what is required to place the lessor in the same financial position he would have enjoyed in the absence of the breach.</u>

*Id.* at 464 (emphasis added). As the Washington Supreme Court recognized, the general rule on lease damages requires occasional modification to fully compensate an injured party for its losses. Thus, contrary to Lechmere's assertion, the *Family Medical* opinion does not necessarily foreclose the application of diminished market value in appropriate contract actions.

We believe our interpretation of *Family Medical* is consistent with the Supreme Court's admonition in *Phillips v. Chesson* that courts, by "always moving toward rules of general application to frequently recurring situations, have evolved many rules which achieve the merit of convenient application and easy provability at the expense of a nearer approach to reality in the particular case." *Phillips*, 231 N.C. at 571, 58 S.E.2d at 347.

We note the courts in *Hornwood* and *Washington Trust Bank* did not apply precisely the same diminished market value formula in calculating damages. This is consistent with our Supreme Court's declaration that diminished market value "is applied with caution, and <u>often with modifications designed to relax its rigidity and fit it to the facts of the particular case.</u>" *Id.* (emphasis added).

In the context of a breach of contract between the anchor store and the shopping center in which it resides, we recognize there are often extensive damages. *See Hornwood v. Smith Food King No. 1,*

807 P.2d 208 (Nev. 1991); Tyson, *Drafting, Interpreting, and Enforcing Commercial and Shopping Center Leases*, 14 CAMPBELL L. REV. 275 (1992). These damages result because the shopping center is a "cooperative enterprise, with each store's success dependent on the continued operation of the other stores . . . ." *Dover Shopping Center, Inc. v. Cushman's Sons, Inc.*, 164 A.2d 785, 790 (N.J. Super. Ct. App. Div. 1960). The contribution of each store determines the flow of business of the entire shopping center, and likewise, a store leaving affects the center as a whole. *See W & G Seafood Associates, L.P. v. Eastern Shore Markets, Inc.*, 714 F. Supp. 1336, 1348 (D. Del. 1989). Though a shopping center is "cooperative" in nature, the anchor store is the focal point of the entire shopping center. Tyson, 14 CAMPBELL L. REV. 301-303. The function of the anchor is "to provide certainty of income stream, an identity and stability for the center which, in turn, draws customers, attracts other tenants and increases overall sales." *Id.* at 303. Further, without an anchor store long-term financing is virtually impossible to obtain. *Hornwood v. Smith's Food King No. 1*, 772 P.2d 1284, 1286 (Nev. 1989). Therefore, the anchor's loss has been described as "worse than a flood, fire or tornado, because usually there is insurance to cover [natural] disasters." Tyson, 14 CAMPBELL L. REV. at 303.

Pleasant Valley installed Lechmere as the Center's anchor store based on Lechmere's product mix, value offered, aggressive advertising method, and regional drawing power. Lechmere, in breach of the Agreement, abandoned the Center. As a result of Lechmere's abandonment, Pleasant Valley claimed damages arising from: (1) harm to the overall probability of success of the Center; (2) harm to the fair market value of the Center; and (3) harm to the Center's ability to attract and retain non-anchor tenants and a corresponding reduction in customer traffic and the attendant decrease in sales revenue.

Therefore, consistent with the guidance of our Supreme Court, we believe a damages remedy should be available to Pleasant Valley which promotes the frequently declared objective of placing "the injured part[y] in as good a position as they would have been in if the contract had not been breached. . . ." Knapp, COMMERCIAL DAMAGES: A GUIDE TO REMEDIES IN BUSINESS LITIGATION, § 1.02 (Matthew Bender 1995). Accordingly, we conclude the damages measure asserted by Pleasant Valley, diminution in market value, is recoverable in a breach of contract action.[2]

---

2. We summarily reject Lechmere's contention damages are inappropriate in the present case because Pleasant Valley's injury could have been equitably abated. Our

2.

[8] Having determined diminution in market value may be applied to redress breach of contract occurring between an anchor store and the shopping center in which it resides, we next examine whether this measure constitutes the damages remedy implied by law or, alternatively, a consequential damage measure.

According to our Supreme Court, " 'general damages are such as might accrue to any person similarly injured, while special damages are such as did in fact accrue to the particular individual by reason of the particular circumstances of the case.' " *Penner v. Elliot*, 225 N.C. 33, 35, 33 S.E.2d 124, 126 (1945) (*quoting* Black's Law Dictionary 314-315 (2d ed.)). As noted in a leading treatise on damages:

> Consequential or special damages for breach of contract are those claimed to result as a secondary consequence of the defendant's non-performance. They are distinguished from general damages, which are based on the value of the performance itself, not on the value of some consequence that performance may produce.

3 Dan B. Dobbs, LAW OF DAMAGES, § 12.4(1) (2d ed. 1993) (emphasis added). Finally, as Lechmere correctly asserts, the *Hornwood* court determined "diminution in value of the shopping center occurring when [defendant] breached the lease is a recoverable consequential damage." *Hornwood*, 772 P.2d at 1286 (emphasis added).

After careful review of the evidence presented at trial, we believe any damages caused by Lechmere's breach occurred "by reason of the particular circumstances of the case." *Penner v. Elliot, supra.* More-

---

courts, in analogous situations, have held that an aggrieved party may seek damages or elect to require specific performance. *See, e.g., Brannock v. Fletcher*, 271 N.C. 65, 73, 155 S.E.2d 532, 541 (1967); *Lyerly v. Malpass*, 82 N.C. App. 224, 230, 346 S.E.2d 254, 258 (1986), *disc. review denied*, 318 N.C. 695, 351 S.E.2d 748 (1987).

We also reject Lechmere's contention the general measure of damages for breach of lease is appropriate under the present facts and circumstances. Because Lechmere owned the land upon which its store was located, damages cannot arise directly from any lease agreement. In addition, we believe the general measure of damages for breach of lease is under-inclusive, as it fails to compensate plaintiff for several elements of harm established by expert testimony, including: (1) the reduction in fair market value of the Center caused by Lechmere's departure; (2) the reduction in plaintiff's ability to attract and retain non-anchor tenants caused by Lechmere's early departure; and (3) the reduction in the Center's overall probability of success due to Lechmere's departure during the Center's stabilization period.

.

over, as Lechmere purchased its space within the Center from Pleasant Valley, Pleasant Valley did not receive rent, or other periodic payments, for its use. Consequently, Lechmere's non-performance under Section 8.1 of the operating covenants did not *directly* cause financial harm to Pleasant Valley. Rather, the damages claimed by Pleasant Valley, (1) harm to the overall probability of success of the Center; (2) harm to the fair market value of the Center; and (3) harm to the Center's ability to attract and retain non-anchor tenants (and thus a corresponding reduction in customer traffic and the attendant decrease in sales revenue), occurred, if at all, as a "secondary consequence of defendant's non-performance." 3 Dobbs, LAW OF DAMAGES, § 12.4(1).

Accordingly, we believe Pleasant Valley's alleged damages are best characterized as special damages as defined by Rule 9(g) of the North Carolina Rules of Civil Procedure. *See Piedmont Plastics, Inc. v. Mize Co.*, 58 N.C. App. 135, 140, 293 S.E.2d 219, 223 (1982).

At the charge conference in the instant action, Pleasant Valley requested the jury be charged to consider the diminution in market value measure as "general damages." Although Lechmere objected to the proposed jury instruction, it did not object on the ground diminution in market value constituted a special damage not specifically pled in plaintiff's complaint. Consequently, the trial court, faced with complex commercial litigation raising matters of first impression within our jurisdiction, did not have the opportunity to consider the question of whether diminution in market value constituted special damages under the particular circumstances of the present case.

The trial court instructed the jury:

> Now, a party seeking recovery for losses occasioned by another's breach of contract need not prove the amount of its prospective damages with absolute certainty. A reasonable showing will suffice. . . .
>
> . . . .
>
> The damages claimed by the plaintiff for the breach of the contract consist of general damages. Now I will explain to you what that term means.

We find no fault with the trial court's instruction on *general* damages for breach of contract. As noted by this Court, however, "special damages . . . must be pleaded, and the facts giving rise to the special

damages must be alleged <u>so as to fairly inform the defendant of the scope of plaintiff's demand</u>." *Rodd v. Drug Co.*, 30 N.C. App. 564, 568, 228 S.E.2d 35, 38 (1976) (emphasis added).

Furthermore, to recover special damages at trial, plaintiff must demonstrate it has suffered damages such as may reasonably be supposed to have been within the contemplation of the parties when the contract was made. *Troitino v. Goodman*, 225 N.C. at 412, 35 S.E.2d at 281. "The question whether or not the defendant did in fact foresee, or had reason to foresee, the injury that the plaintiff has suffered is a question of fact for the jury . . . ." 5 Arthur L. Corbin, CORBIN ON CONTRACTS, § 1012 (2d ed. 1964). Because the jury was not presented with this question for determination, its $8.0 million award of general damages cannot stand.

3.

Because the jury's $8.0 million verdict must be set aside, we now turn to fashioning an appropriate remedy.

Under North Carolina law, the appellate division may order a new trial notwithstanding plaintiff's failure to move for a new trial or except to the conditional denial of one on remand. *Plyler v. Moss & Moore, Inc.*, 40 N.C. App. 720, 254 S.E.2d 534 (1979); *Lindsey v. Clinic for Women*, 40 N.C. App. 456, 253 S.E.2d 304 (1979). *See* N.C. Gen. Stat. §§ 1-297 (1983), and 1A-1, Rule 50(d) (1990).

At trial the parties, and the trial court, proceeded under the impression that diminution in value was an appropriate remedy, if at all, as a general measure of damages. Pleasant Valley did not specifically plead diminution in market value as a special damage in its complaint. Lechmere, on the other hand, did not assert the defense that diminution in market value constituted a special damage in the trial court. See *Mobley v. Hill*, 80 N.C. App. 79, 84, 341 S.E.2d 46, 49 (1986) ("[g]rounds [for JNOV] not specifically raised at trial generally may not be raised on appeal, unless it is readily apparent from the record what grounds were relied on at trial."); *Lee v. Keck*, 68 N.C. App. 320, 328, 315 S.E.2d 323, 329, *disc. review denied*, 311 N.C. 401, 319 S.E.2d 271 (1984).

Attempting, as we must, to balance the equities between the parties, and in light of the complexity of the novel issues raised at the trial of this matter, we reverse the trial court's grant of judgment notwithstanding the verdict and award of nominal damages in the amount of $1, and remand this case, in the interests of justice, for a

new trial on damages. *Cf. Shankle v. Shankle*, 289 N.C. 473, 486-487, 223 S.E.2d 380, 388 (1976).

On remand the trial court may, in its discretion, afford the parties a reasonable opportunity for further discovery in light of the additional issues related to special damages which may be asserted at retrial. We have concluded diminution in market value may be applied to redress breach of contract occurring between an anchor store and the shopping center within which it resides. Nevertheless, because a new trial is appropriate in the present case, the trial court must determine, based on the evidence offered at retrial, whether the evidence justifies submission of the diminution in market value measure of damages.

We have carefully reviewed the remaining assignments of error and conclude they are without merit.

Affirmed in part, reversed in part, and remanded for new trial.

Judge LEWIS concurs.

Judge GREENE concurs with separate opinion.

Judge GREENE concurring.

I write separately to emphasize that we are not holding that diminished market value is the measure of damages in this breach of contract case. We simply hold that because diminished market value is in the nature of a special damage in this case, damages based on diminished value are recoverable *if* such damages were in the contemplation of the parties at the time the contract was made.