IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 24, 2000 Session

## BVT LEBANON SHOPPING CENTER, LTD.  v.  WAL-MART STORES, INC., ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section
Circuit Court for Wilson County
No. 9113     Hon. Bobby Capers, Judge**

_____

**No. M1997-00059-SC-R11-CV - Filed March 1, 2001**

_____

WILLIAM M. BARKER, J., concurring.

I join in the majority's conclusion that diminution-in-value damages may be awarded in cases where an anchor tenant breaches a commercial lease. I write separately, however, because I believe that the majority's opinion has rewritten the law of contract damages in this area by unintentionally changing the standards for establishing certain types of damages. Today, the majority "adopt[s] diminution in value as the measure of damages for breach of a covenant of continuous occupancy," and in doing so, the majority appears to suggest that lost future percentage rent is included within this calculation of special damages. Because lost future rent is not an element of special damages—it is a measure meant to directly compensate for the defendant's failure to perform—it is not subject to the heightened proof and pleading requirements that traditional contract law requires of special damages. Yet, because the majority opinion can be read as accomplishing precisely this result, I write separately in the hopes of eliminating any confusion that such was our intention.

**I.**

The majority correctly states the general goal of contract damages, which is to place the "injured parties 'in as good a position as they would have been in if the contract had not been breached.'" (quoting Pleasant Valley Promenade v. Lechmere, Inc., 464 S.E.2d 47, 62 (N.C. Ct. App. 1995); see also Adams TV of Memphis, Inc. v. ComCorp of Tennessee, Inc., 969 S.W.2d 917, 922 (Tenn. Ct. App. 1997). Indeed, the majority cites the test for expectation damages in section 347 of the *Restatement (Second) of Contracts* as a correct formulation of this general goal. The *Restatement* measure of expectation damages provides, in a simple and straightforward manner, that

the injured party has a right to damages based on his expectation interest as measured by

(a)　　the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

(b)　　any other loss, including incidental or consequential loss, caused by the breach, less

(c)　　any cost or other loss that he has avoided by not having to perform.

Having cited the *Restatement* test as the proper standard to calculate damages, however, the majority does not appear to have properly applied it. In writing separately, I wish to convey my view that by expressly adopting a *Restatement* approach, we could provide for a more simple and direct resolution of the issues in this case, and we would necessarily eliminate the potential for confusing the standards for pleading and proving different types of contract damages.

Under section 347(a) of the Restatement test, I would first permit a plaintiff to recover lost future percentage rental income as the "loss in the value . . . of the other party's performance caused by its failure or deficiency." As is the case in virtually all lease contracts, the lessee's primary obligation of performance is the payment of rents to the lessor, and as a corollary to this principle, the loss in value of the lessee's performance may be measured in part by the lost future rent occasioned by the breach of the lease. Cf. Ferrell v. Elrod, 469 S.W.2d 678, 690 (Tenn. Ct. App. 1971) (permitting, among other things, loss rent from a breach of a lease). Because these damages represent the loss in value of performance, a plaintiff need only show that these damages can be proven with a reasonable degree of certainty. In this case, the lease included a percentage of the defendant's gross receipts as part of the rental payments. Although this measure of damages is not as precise as a fixed monthly amount, lost percentage rental income is clearly available when it can be proven to a reasonable degree of certainty, and the plaintiff has proven these damages to my satisfaction.

Second, under section 347(b) of the Restatement test, I would also permit a plaintiff to recover the diminution in the market value of the shopping center as an element of special or consequential damages. As the cases cited by the majority recognize, diminution-in-value damages are in fact a measure of special damages, see Hornwood v. Smith's Food King No. 1, 772 P.2d 1284 (Nev. 1989); Lechmere, Inc., 464 S.E.2d at 62-63, and as such, these damages are properly awarded in this state only when the damages are (1) plead with specificity, Tenn. R. Civ. P. 9.07; (2) proven that they were within the contemplation of the parties at the time of the contract, Turner v. Benson, 672 S.W.2d 752, 755 (Tenn. 1984); and (3) proven with reasonable degree of certainty, Chisholm & Moore Mfg. Co. v. United States Canopy Co., 111 Tenn. 202, 211, 77 S.W. 1062, 1064 (1903); Wachtel v. Western Sizzlin Corp., 986 S.W.2d 2, 6 (Tenn. Ct. App. 1998). I agree with the Court's resolution of these issues in this case, and I concur in the Court's remand to the trial court to determine the appropriate amount of these damages.[1]

---

[1] The trial court, of course, would then be required to determine, under section 347(c), the amount of the cost or other loss that the plaintiff has avoided by not having to perform and to subtract this amount from the total amount derived from the lost rent and the diminution in value of the shopping center.

Rather than following the comparatively simple and logical approach of the *Restatement* to resolve the issue of proper damages in this case, however, the majority has instead consolidated the available damages in cases involving an anchor tenant's breach of a commercial lease under a single heading labeled "diminution in value" damages. In so doing, the majority has included more than just traditional damages for the diminution in value of the shopping center; the majority's measure also includes the lost future percentage rent of the breaching lessee. While I take no issue with permitting the plaintiff to recover both types of damages in this case—to be clear, this is precisely my view—I differ with the majority's analysis to the extent that it sees no meaningful distinction between the different types of contract damages involved here.

Damages for the diminution in value of a shopping center recognize that a plaintiff is harmed in ways other than the prospect of losing the future rent payments of the lessee. As the North Carolina Court of Appeals succinctly articulated these concerns,

> These damages result because the shopping center is a "cooperative enterprise, with each store's success dependent on the continued operation of the other stores. . . ." The contribution of each store determines the flow of business of the entire shopping center, and likewise, a store leaving affects the center as a whole. Though a shopping center is "cooperative" in nature, the anchor store is the focal point of the entire shopping center. The function of the anchor is "to provide certainty of income stream, an identity and stability for the center which, in turn, draws customers, attracts other tenants and increases overall sales." Further, without an anchor store long-term financing is virtually impossible to obtain. Therefore, the anchor's loss has been described as "worse than a flood, fire or tornado, because usually there is insurance to cover [natural] disasters."

Pleasant Valley Promenade, 464 S.E.2d at 61 (citations omitted). Because diminution-in-value damages, as special damages, flow from the unique circumstances or conditions of the particular case, though, these damages must have been contemplated by the parties at the time of the contract. See Hornwood, 772 P.2d at 1286 (finding that diminution-in-value damages must have been foreseeable); Pleasant Valley Promenade, 464 S.E.2d at 63 (finding that diminution-in-value damages are special damages and must be foreseeable).

By including lost future percentage rent payments into the calculation of these special damages, however, the majority presumably now requires that lost future rental payments must meet all of the additional conditions required to obtain special damages, *i.e.*, proof of special pleading, proof that such damages were within the contemplation of the parties, and proof that the damages can be determined with reasonable certainty. To be sure, I do not believe that the majority actually intends such a result, but by not adopting the precise analysis of the *Restatement*, the majority has needlessly introduced an element of uncertainty in this regard. By consolidating all of the plaintiff's damages into a single category of "diminution-in-value damages," the majority appears to have confused damages which are based on the value of the performance itself with those damages based on the value of some consequence which that performance may produce. Because I believe that the

majority's analysis is unnecessarily confusing as to the burdens and standards needed to obtain remedy for a breach of a commercial lease, I would prefer that the Court expressly adopt the *Restatement* approach to measure expectation damages to avoid any misunderstanding.

## II.

While the majority notes that the plaintiff requested lost future percentage rentals and diminution in value as alternative forms of relief, I agree with the majority that this fact does not preclude an award of both types of damages in this case. Although the majority does not devote very much attention to this issue, Tennessee Rules of Civil Procedure 54.03 provides that

> Except as to a party against whom a judgment is entered by default, *every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings;* but the court shall not give the successful party relief, though such party may be entitled to it, where the propriety of such relief *was not litigated and the opposing party had no opportunity to assert defenses to such relief.*"

(emphasis added); see also Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). In this case, the defendant had ample notice and opportunity to assert defenses as to both types of relief sought, and in fact, it did present proof and argument as to both types of damages. Moreover, at the close of the proof of damages, the plaintiff moved to amend the pleadings to conform to the evidence presented pursuant to Rule of Civil Procedure 15.02, and as such, the issue of loss percentage rentals should be treated by this Court as if the issue were raised in the initial pleadings. See Electric Controls v. Ponderosa Fibres of America, 19 S.W.3d 222, 227 & n.3 (Tenn. Ct. App. 2000) (recognizing that when parties have actually litigated the issues, Rule 15.02 provides an exception to the general rule "that irrespective of what may be proved a court cannot decree to any plaintiff more than he claims in his bill or other pleadings"). Accordingly, because the parties litigated the issues concerning both types of damages and because the complaint was amended to conform to the proof, I agree that the Rules of Civil Procedure do not prohibit the plaintiff from recovering both types of damages under traditional contract law.[2]

---

[2] A different problem may be presented if the remedies sought were inconsistent and irreconcilable, and in such a case, the plaintiff would need to elect the remedy sought in order to prevent the possibility of a double recovery. Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 906 (Tenn. 1999). However, recovery for damages based upon lost percentage rentals and for damages based on diminution in value of the shopping center in no way permits the plaintiff to achieve a double recovery. To the contrary, damages for lost percentage rentals seek to remedy the defendant's failure to perform under the lease agreement itself, and damages for diminution in value of the shopping center seek to remedy the effects from the breach of the implied covenant of continuous occupancy. Contrary to the settled law of contract remedies, to permit one measure of damages without the other is to prohibit a plaintiff from being placed in as good a position as if the contract had been fully performed.

-4-

For these reasons, I concur in the judgment of the Court remanding this case to the trial court for further hearings on diminution-in-value damages. I also agree with the decision of the Court to let stand the trial court's award of lost future percentage rent. I respectfully disagree, however, with the majority's decision not to apply the test as set forth in section 347 of the *Restatement (Second) of Contracts*. In my opinion, the *Restatement* test provides for a clear method of analysis, and it avoids any potential misunderstandings which the majority decision may unintentionally help to create.

 

_____
WILLIAM M. BARKER, JUSTICE