CARL W. LYERLY, ET UX., ET AL. v. ALEX MALPASS, ET AL.

No. 865SC81

(Filed 5 August 1986)

**1. Deeds §§ 18, 20— amenities in subdivision—covenants by developer**

While there may have been no written document in which defendant developer expressly agreed to build a boat basin, dredge a channel to certain minimum requirements and construct a road to specifications, there was clearly an implied promise as part of the contract of purchase and sale arising from the covenants, plats, and oral representations that defendant would complete these amenities.

**2. Deeds §§ 18, 20— amenities in subdivision—implied promise by developer**

A developer may not by the use of recorded plats and restrictive covenants create the illusion of a high quality subdivision and then shield itself from responsibility by claiming that it did not promise to construct the amenities implied by the restrictive covenants and that these covenants do not give rise to an affirmative obligation, since to permit such conduct would be to condone deception.

**3. Contracts § 21— amenities in subdivision—substantial performance of developer—no defense in action for specific performance**

In an action for specific performance of a contract to build a boat basin, access channel, and a paved access road, there was no merit to defendant's contention that it had "substantially performed" its duties under the contract and that plaintiff, if entitled to any relief at all, was entitled only to nominal damages, since "substantial performance" enables a performing party to recover the full contract price for something less than full and exact performance; the doctrine is not available as a defense in a suit against that party for damages or specific performance; and performance cannot be deemed "substantial" in character when the purposes and ends of the promised performance have been defeated by the non-performance, as in this case with the channel which was 80% dredged, but the purpose of which was completely frustrated by the part which remained undredged.

**4. Vendor and Purchaser § 5— amenities in subdivision—purchasers entitled to specific performance**

Plaintiffs were entitled to specific performance in their action to require defendant to build a boat basin, access channel, and paved access road.

APPEAL by defendant Inlet Point, Inc. from *Stevens (Henry)*, *Judge.* Judgment entered 14 June 1985 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 4 June 1986.

Plaintiffs are purchasers and owners of various lots in the Inlet Point Subdivision in New Hanover County. They initiated this action, alleging that defendants had pledged to build a boat basin for the residents of the subdivision and an access channel to the

Intracoastal Waterway. The basin and channel were to be a minimum depth to allow ingress and egress at low tide, and concrete panels were to be installed along the boat basin to prevent erosion.

Plaintiffs' complaint further alleges that defendants had promised to construct a paved access road, called Inlet Point Drive, connecting the subdivision to U.S. Highway 421. Plaintiffs alleged that the street had been left unpaved, with improper drainage, causing severe erosion problems and making automobile passage nearly impossible.

Plaintiffs alleged that the representations by defendants concerning the basin were relied upon by plaintiffs in purchasing their lots. Their complaint prayed for an order compelling defendants to specifically perform their obligations.

Defendants answered, generally denying the allegations, and setting forth the affirmative defenses of laches, failure of consideration, the statute of limitations and the statute of frauds. The parties waived jury trial and the trial judge heard the evidence. At the close of plaintiffs' case, the judge granted a directed verdict as to all defendants except Inlet Point, Inc. (herein defendant or Inlet). At the close of all the evidence, judgment was entered for the plaintiffs. Inlet was ordered to dredge the basin and channel to a minimum depth of six feet at mean low tide and to grade and pave Inlet Point Drive with an asphalt surface one and one-half inches thick and twenty feet wide. Defendant appeals.

*William F. Simpson, Jr., for plaintiffs-appellees.*

*L. Gleason Allen for defendant-appellant Inlet Point, Inc.*

PARKER, Judge.

When the trial court sits as the trier of fact without a jury, Rule 52(a) of the N.C. Rules of Civil Procedure requires the court to "find the facts specially and state separately its conclusions of law thereon . . . ." The appellate courts are bound by the trial courts' findings of fact so long as there is some evidence to support those findings, even though the evidence could sustain findings to the contrary. *In re Montgomery*, 311 N.C. 101, 316 S.E. 2d 246 (1984). The trial judge weighs the evidence, passes upon the credibility of witnesses and the weight to be given their testi-

mony, and draws the reasonable inferences therefrom. *See In re Whisnant,* 71 N.C. App. 439, 322 S.E. 2d 434 (1984).

The evidence presented at trial tended to show that defendant Inlet was the developer of a subdivision in New Hanover County. According to the subdivision plats filed with New Hanover County, this subdivision was to include a boat basin with a channel for access to the Intracoastal Waterway. The channel was to be approximately 250 feet long, thirty feet wide and a minimum of six feet deep at mean low tide. All plaintiffs claimed that this basin with its access to deep water was the major attraction for them when buying their lots.

Also shown on the recorded plat was Inlet Point Drive, a private road providing the subdivision with access to U.S. Highway 421. The plat stated that the street was "to be built to North Carolina Department of Transportation specifications." The plaintiffs testified that the developer's agents had promised them that the road would be paved all the way to Highway 421.

Plaintiffs' evidence further showed that the channel had a depth of only eighteen to twenty-four inches over a thirty-foot stretch and was impassable at low tide. The owner of a marine construction company with dredging experience testified that the material blocking the channel was solid shell, making it apparent to him that that material had never been dredged. He testified that such an amount of hard material would take hundreds of years to accumulate. As for the road, the evidence for plaintiffs was that the road had been paved earlier, but the developer's construction equipment had broken it up badly. Plaintiffs were promised by agents of the developers that the road would be resurfaced.

Defendant's evidence was that construction of the road and channel had been completed, and according to the subdivision covenants, completion of construction ended its responsibility over them. The blockage in the channel, defendant contended, was simply silt which could be cleared by routine maintenance. The covenants provided that as soon as four lots were sold, a Homeowner's Association would be formed to take over maintenance of the road, basin and channel. Four lots have been sold, but no association has been formed. Defendant contended that the plaintiffs were responsible for maintenance of the road and channel, because it was their duty to form the Homeowner's Association.

From this conflicting evidence, the trial court made the following pertinent findings of fact:

15. That said recorded plats in Map Book 18 Page 113 and Map Book 19 Page 37 show Inlet Point Drive running from the eastern right-of-way of U.S. 421, to its terminus 2,364 feet S. 86 degrees 20 minutes East and having a 60-foot right-of-way.

16. That the aforesaid recorded plats recite that the streets in Inlet Point Subdivision will be built to the specifications of the North Carolina Department of Transportation (now the Division of Highways) and the specifications of New Hanover County.

17. That said Inlet Point Drive was to be paved for the aforesaid distance with 1½ inches of asphalt with a width of 20 feet.

18. That plaintiffs were told that Inlet Point Drive would be paved for its entire length prior to their purchase of their lots by Charles C. Lewis, Sr.

19. That the boat basin located behind the lots belonging to plaintiffs in Inlet Point Subdivision was to be dredged to a depth of six feet at mean low water.

20. That the channel leading from the boat basin to the Intracoastal Waterway was to be dredged to a depth of six feet at mean low water.

21. That the restrictive covenants required the plaintiffs to maintain Inlet Point Drive once it was completed and also required them to maintain the channel and the boat basin at a depth of six feet at mean low water once they had been dredged to said depth.

22. That plaintiffs have been unable, since the purchase of their lots until the present, to enter or exit the boat basin with their boats at low tide because the channel has not been dredged to a depth of six feet at mean low water.

23. That a portion of Inlet Point Drive has been paved with 1½ inches of asphalt with a width of 20 feet but not for its entire length.

24. That plaintiffs were told that the boat basin and channel to the Intracoastal Waterway would be dredged to a depth of six feet at mean low water prior to the purchase of their lots by Charles C. Lewis, Sr.

25. That some dredging has been done in the boat basin and the channel from said basin to the Intracoastal Waterway but that neither are six feet deep at mean low water.

From its factual findings, the trial court concluded that the duties imposed on plaintiffs by the restrictive covenants imposed a concomitant duty on Inlet to construct the roads, streets, boat basin and channel as represented, that the existence of these amenities was an inducement to and part of the consideration for the purchase of the lots by plaintiffs and that Inlet had breached its contract; specific performance was awarded as stated earlier.

[1] Defendant argues that the trial court erred in ordering it to dredge the basin and channel and resurface the road. Defendant contends that there was no contract between plaintiffs and defendant and argues that the court erred in concluding that the deeds from defendant and its agents are contracts. The basis of defendant's argument is that Inlet was not the grantor in all plaintiffs' deeds. From the record, this fact is undisputed. On the face of the deed to Warren F. DeLong, Charles C. Lewis & Associates was the grantor and in the deed to the Lyerlys, Charles C. Lewis Associates, Inc. was the grantor. However, in our view, the conclusion that the deeds are contracts is not necessary to support the trial court's judgment. Therefore, the error, if any, was not prejudicial. There is evidence that defendant Malpass and defendant Charles C. Lewis, Sr., both stockholders in Inlet, considered Lewis to be the salesperson for development of the subdivision for Inlet. Lewis testified that the money from the sale of the lot to the Lyerlys went to Inlet. This evidence is sufficient to support the finding that Lewis was the agent of Inlet to develop the subdivision even though record title to the lots had been put in Lewis' partnership to facilitate obtaining financing for construction.

The restrictive covenants were recorded in the public registry and were incorporated by reference into the deed delivered to each plaintiff. The pertinent provisions of the restrictive covenants referred to in the deeds clearly contemplate that

the roads within the subdivision, the boat basin and the channel would be completed by the developer, with a homeowner's group to be formed later to take over the maintenance of these amenities. Additionally, the trial court found as fact that the plats showed these amenities and that agents of defendant had orally represented to plaintiffs that these amenities would be built.

While there may be no written document in which defendant Inlet expressly agreed to build the basin, dredge the channel to certain minimum requirements and construct the road to specifications, there was clearly an implied promise as part of the contract of purchase and sale arising from the covenants, plats and oral representations that Inlet would complete these amenities. Such an implied promise arises from the words used and is based on the presumed intention of the parties.

[2]  A developer may not by the use of recorded plats and restrictive covenants create the illusion of a high quality subdivision and then shield itself from responsibility by claiming that it did not promise to construct the amenities implied by the restrictive covenants and that these covenants do not give rise to an affirmative obligation. To permit such conduct would be to condone deception. Note should be taken that the restrictive covenant at issue in the instant case is not substantively the same type covenant historically contained in restrictive covenants such as set-back lines, height of fences, and size of houses, all of which place a limitation on the owner. Here by contrast, the grantees are burdened with an affirmative obligation to maintain an amenity, the completion of which was an inducement for buying in the subdivision. The trial court's findings of fact are supported by competent evidence and are thus conclusive on appeal. *See Montgomery, supra.* Those findings are sufficient to support the conclusions of law. Therefore, the only question remaining is the relief to which plaintiffs are entitled.

[3]  Inlet contends that if plaintiffs are entitled to any relief at all, it would be only nominal damages, as Inlet claims to have "substantially performed" its duties under the contract, because the access road is passable and partially paved and that only a thirty-foot length of a 250-foot channel is too shallow. This argument is a misunderstanding of the doctrine of substantial performance. "Substantial performance" enables a performing party

to recover the full contract price for something less than full and exact performance. The doctrine is not available as a defense in a suit *against that party for damages or specific performance.* 3A *Corbin on Contracts* § 702 (1984 Supp., Part 1). Further, performance cannot be deemed "substantial" in character when the purposes and ends of the promised performance have been defeated by the nonperformance as in the case of the channel. *Id.*, § 706. Even though the channel is eighty percent dredged, its purpose is completely frustrated by the part which remains undredged.

**[4]**  Inlet next contends that, even if plaintiffs have proved a breach of contract, they are only entitled to money damages, not specific performance. Specific performance

> 'will be granted or withheld by the court according to the equities of the situation as disclosed by a just consideration of all the circumstances of the particular case, and no positive rule can be laid down by which the action of the court can be determined in all cases.'

*Byrd v. Freeman,* 252 N.C. 724, 730, 114 S.E. 2d 715, 720 (1960), *quoting* 49 Am. Jur., *Specific Performance* § 8. Thus, the decision to grant or deny specific performance is one vested largely in the discretion of the trial court. *See Taylor v. Bailey,* 49 N.C. App. 216, 271 S.E. 2d 296 (1980).

The remedy of specific performance is available to compel a party to do precisely what he ought to have done without compulsion. *Munchak Corp. v. Caldwell,* 301 N.C. 689, 273 S.E. 2d 281 (1981). Thus, the existence of a remedy at law will not automatically preclude specific performance where the legal remedy is not as efficient and practical in meeting the needs of the aggrieved party. *Rose v. Rose,* 66 N.C. App. 161, 310 S.E. 2d 626 (1984). In this case, money damages could have been awarded to enable plaintiffs to hire their own contractors to dredge the channel and pave the street. However, because plaintiffs are an unorganized group of individual lot owners, that remedy would not be as efficient and practical as simply requiring Inlet to do what it had promised to do in the beginning. There was no error by the trial court in awarding specific performance.

Inlet's final contention is that the trial court erred in finding as fact the street specifications of the North Carolina Division of

Highways where no evidence of those specifications was presented. The trial court found that those specifications required one and one-half inches of asphalt over a twenty-foot width. The court also found that part of Inlet Point Drive had been paved with one and one-half inches of asphalt, twenty feet wide. The latter finding was based on personal observation made when the trial judge viewed the location with the consent of the parties. Either finding of fact would be sufficient for the court to order defendant to complete the road to the same specifications. Therefore, even though we agree that it was improper for the court to find as fact the State specifications, that error does not affect the result as it was appropriate for the court to order the defendant to complete the road as begun.

The evidence presented to the court below was sufficient to support its crucial findings of fact. Those findings justify its conclusions of law. The judgment below is

Affirmed.

Judges PHILLIPS and MARTIN concur.