JANET WALKER ADAMS v. LITZ EDWARD ADAMS

No. 8822DC421

(Filed 20 December 1988)

**1. Divorce and Alimony § 16— alimony—adultery during separation**

Voluntary sexual intercourse by a spouse with a third party during the period of separation required by N.C.G.S. § 50-6 is adultery as contemplated by N.C.G.S. § 50-16.2(1), and is a ground for alimony. The North Carolina alimony statutes do not call upon the appellate courts to determine on a case by case basis when a spouse may justifiably act upon the other spouse's announcement that reconciliation is impossible; until the State grants them an absolute divorce, a couple continues to be wife and husband even though separated from each other.

2. **Divorce and Alimony § 16.8— alimony—findings as to standard of living, value of estates, and defendant's earnings—adequate**

    The trial court's findings in a divorce action as to defendant's monthly gross income and his reasonable living expenses, coupled with findings as to plaintiff's monthly income and her expenses during the last year of the marriage, satisfy the requirement of N.C.G.S. § 50-16.5(a) for findings regarding the parties' accustomed standard of living; the judge's findings as to the parties' income, their assets, and their earning capacities were adequate findings regarding the parties' estates; and the trial court correctly calculated defendant's earnings.

    Judge GREENE concurring.

APPEAL by defendant from *Kimberly T. Harbison, Judge.* Judgment entered 26 May 1987 in District Court, DAVIE County. Heard in the Court of Appeals 1 November 1988.

*Morrow, Alexander, Tash, Long and Black by Charles J. Alexander, II, of counsel, and Ronald B. Black, of counsel, for plaintiff-appellee.*

*Harrell Powell, Jr., and Garry Whitaker for defendant-appellant.*

BECTON, Judge.

Defendant appeals from a judgment ordering him to pay $618.34 per month in alimony and mortgage payments and directing that he contribute $2,000 towards plaintiff's attorney fees. We affirm.

Plaintiff, Janet Walker Adams, and defendant, Litz Edward Adams, married on 15 August 1981. They separated on 31 July 1985. The following day, Ms. Adams filed a complaint seeking divorce from bed and board and temporary and permanent alimony. Ms. Adams based her prayer for permanent alimony on alleged indignities and alcohol abuse by her husband. In his answer, Mr. Adams denied those allegations, and he charged Ms. Adams with indignities and with abandonment. On 31 October 1985, Ms. Adams amended her complaint to aver that her husband had "engaged in open and notorious adulterous activities" since the date of their separation.

Ms. Adams' claim for permanent alimony was heard in two phases between January and March 1987. The first phase ended on 2 February when a district court jury returned answers to

seven "issues" addressing, primarily, the fault grounds alleged by both parties. The jury found that Ms. Adams had committed indignities against her husband and had abandoned him without just cause. The jury also found that Mr. Adams had committed adultery as alleged by Ms. Adams. It found that Mr. Adams had not offered indignities against Ms. Adams and had not abused alcohol.

After the verdict, the questions of Ms. Adams' dependency and of the amount of alimony to be awarded her were heard before the district court judge. She entered judgment on 26 May 1987. Included in the judgment were 25 findings of fact. Among other things, the judge found that Mr. Adams was 38-years-old; that he was "essentially the owner, operator, manager and primary beneficiary of the income" of LEA Auto Brokers, Inc.; that LEA had deposits of $1,212,292.78 and expenses of $1,149,195.05 between February 1986 and January 1987; that Mr. Adams' monthly gross income during that year was approximately $5,258; that Mr. Adams had "reasonable and necessary monthly living expenses, exclusive of payments on indebtedness," of $1,714.50; and that Mr. Adams had debts totaling $26,145, not including his obligation to make payments on two mortgages on the marital home. The judge found Mr. Adams to be a supporting spouse under N.C. Gen. Stat. Sec. 50-16.1(4) (1987).

The judge included among her remaining findings that Ms. Adams was 43-years-old; that she had had little income from outside employment during her marriage to Mr. Adams; that she owned a design business called Adams Interiors; that she had an associate's degree in interior design and was pursuing an advanced degree in the subject; that Adams Interiors grossed $86,383 in 1985 and $142,000 in 1986; that Ms. Adams' net monthly income from her business was $611 in 1985 and $853.80 in 1986; that Ms. Adams "ha[d] demonstrated an earning capacity since the separation . . . substantially in excess of her contributions during the mar[riage] . . ."; and that Ms. Adams' "current necessary and reasonable monthly living expenses" were approximately $2,280. The judge further found that Ms. Adams had inadequate financial resources and that she was a dependent spouse within the meaning of Section 50-16.1(3). The judge found also that the jury's determination of the fault issues supported a

reduction, pursuant to Section 50-16.5(b), of the amount of alimony to be awarded Ms. Adams.

The judge ordered Mr. Adams to pay Ms. Adams $400 per month as permanent alimony. She further directed him to contribute $2,000 toward Ms. Adams' attorney fees and that he pay $218.34 per month on the second mortgage on the marital home prior to equitable distribution. Mr. Adams appeals.

I

[1] Mr. Adams argues that because his adulterous conduct did not begin until after he had separated from Ms. Adams, awarding her alimony contravenes the legislative intent behind the North Carolina alimony statutes. He contends that an essential prerequisite for alimony is that the spouse held liable to pay it be the one primarily responsible for the demise of the marriage. In his brief, Mr. Adams states that the evidence presented at trial demonstrated that Ms. Adams had no intention to reconcile with him after she left their home on 31 July 1985. Consequently, Mr. Adams maintains, the adultery he engaged in after the separation "neither caused the marital break-up nor tended to diminish any remote possibility of reconciliation."

To support his argument, Mr. Adams cites our Supreme Court's discussion, in *Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980), of marital fault and its relevance to alimony awards. In *Williams*, Justice Carlton wrote that

. . . [O]ur legislature clearly intended that fault be a consideration in awarding alimony.

In so providing, the legislature implicitly recognized that the dissolution of the family as an economic unit works hardship on both parties. . . . In such cases, the burden of contending with diminished assets should, in all fairness, fall on the party primarily responsible for the break-up of the economic unit.

. . . Sound public policy would dictate that the party who violated th[e] binding [marriage] contract should continue to bear its financial burden where he or she can reasonably do so and where that is necessary to prevent a relatively greater economic hardship on the party without fault.

*Id.* at 188, 261 S.E. 2d at 858-59 (emphasis omitted). Using *Williams*, Mr. Adams invites us to hold that his post-separation adultery nullifies his fault for alimony purposes, especially in light of the jury's finding that Ms. Adams' misconduct occurred prior to and at the time of separation. We decline to so hold.

The State is a party to every marriage of its citizens, and is, therefore, rightfully concerned about the permanence of their marital status. *See Bruce v. Bruce*, 79 N.C. App. 579, 583, 339 S.E. 2d 855, 858 (1986), *disc. rev. denied*, 317 N.C. 701, 347 S.E. 2d 36 (1986). N.C. Gen. Stat. Sec. 50-6 (1987) requires that a wife and husband live separate and apart for one year before the State will grant them an absolute divorce. This waiting period is designed "to protect the institution of marriage from hasty judgments and casual disruptions since differences may in time be reconciled." *Mayer v. Mayer*, 66 N.C. App. 522, 529, 311 S.E. 2d 659, 665 (1984), *disc. rev. denied*, 311 N.C. 760, 321 S.E. 2d 140 (1984). Only when the parties have lived apart for the statutory length of time will the State recognize that their marriage is not salvageable. *See Bruce*, 79 N.C. App. at 584-85, 339 S.E. 2d at 859.

Until the State grants them an absolute divorce, a couple though separated from each other, continues to be wife and husband. It is for this reason that N.C. Gen. Stat. Sec. 50-16.2 (1987), which sets down the fault grounds for alimony, does not distinguish between pre-separation and post-separation adultery. *See* Section 50-16.2(1). We do not view the failure of the General Assembly to differentiate between these time periods to be an oversight. Rather, defining adultery so as to include any act of voluntary sexual intercourse between a spouse and a third party —the former's separation from the other spouse notwithstanding —is consistent with the policy favoring reconciliation. *See* Lee, *North Carolina Family Law* Sec. 65 (1979) (defining adultery as ". . . voluntary sexual intercourse of a married person with one other than his or her spouse.") Viewed in this way, we do not believe Mr. Adams can claim, as he attempts to do, that he is free from fault concerning the dissolution of his marriage. His conduct diminished prospects for reconciliation with his wife, and it contributed, therefore, to the finality of their break-up.

In cases such as this, the law's drawing of "bright lines" may seem to demonstrate too little regard for the complex emotional

decisions married people make about the state of their relationship. It is our view, however, that the legislature has indicated that such lines exist. Our alimony statutes do not call upon the appellate courts to determine, on a case by case basis, when post-separation adultery is grounds for alimony and when it is not. We are not called upon, in short, to determine when a spouse may justifiably act upon the other spouse's announcement that reconciliation is impossible. Rather, we think it the intent of our legislature, and we so hold, that voluntary sexual intercourse by a spouse with a third party during the period of separation required by Section 50-6 is adultery as contemplated by Section 50-16.2(1), and is a ground for alimony. In so holding, we point out that this case does not involve, and we do not decide, whether any of the other fault-based grounds in the post-separation context affects alimony.

## II

[2] Mr. Adams further claims that the trial judge failed to base the alimony award on adequate findings of fact as required by N.C. Gen. Stat. Sec. 50-16.5(a) (1987) and Sec. 1A-1, R. Civ. P. 52(a) (1983). Specifically, Mr. Adams contends the court did not make findings as to the accustomed standard of living of the parties and the total value of their estates. He also claims the court failed to find facts relevant to his earnings. We find no merit in Mr. Adams' arguments.

Rule 52(a) requires the trial court to find "material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached." *Quick v. Quick*, 305 N.C. 446, 451, 290 S.E. 2d 653, 657 (1982). If the trial court complies with the mandate of *Quick*, appellate courts are bound by the findings of fact so long as some evidence in the record substantiates them. *See Lyerly v. Malpass*, 82 N.C. App. 224, 225, 346 S.E. 2d 254, 256 (1986), *disc. rev. denied*, 318 N.C. 695, 351 S.E. 2d 748 (1987). The binding effect of the trial judge's factual findings is not attenuated by evidence that might have sustained contrary findings. *Id.* at 225, 346 S.E. 2d at 256.

The judge's findings as to Mr. Adams' monthly gross income and his reasonable living expenses, coupled with the findings as to Ms. Adams' monthly income and her expenses during the last

year of the marriage, satisfied the requirement of Section 50-16.5(a) for findings regarding the Adamses' accustomed standard of living. *See Beaman v. Beaman,* 77 N.C. App. 717, 721-22, 336 S.E. 2d 129, 131-32 (1985). The statute does not require a specifically articulated finding on the subject. *See id.* at 722, 336 S.E. 2d at 132. In *Beaman,* the trial court's failure to make a categorical finding about the parties' accustomed standard of living was not fatal to the validity of the judgment. We said that when the "evidence clearly allows the [reviewing] court to determine the parties' accustomed standard of living . . . [a] specific finding of fact [is] not necessary." *Id.* In this case, a specific finding was not necessary either.

The trial judge also made adequate findings concerning the Adamses' estates. "Estate" refers to the financial worth of each spouse. *See Williams,* 299 N.C. at 183, 261 S.E. 2d at 856. Consideration of the parties' estates is intended to assist the judge in determining their earnings and earning capacities since, generally, "the parties will not be required to deplete their estates to pay alimony or to meet personal expenses." *Beaman,* 77 N.C. App. at 722, 336 S.E. 2d at 132. With this purpose in mind, we view the judge's findings as to the Adamses' income, their assets, and their earning capacities to be adequate findings about the parties' estates. *See id.*

Mr. Adams last argues that the trial court incorrectly calculated his earnings. The judge determined Mr. Adams' monthly gross income from February 1986 through January 1987 by subtracting the expenses of Mr. Adams' business from its deposits and dividing the sum by 12. The figures pertaining to deposits and expenses were furnished by Mr. Adams' own testimony and by his own exhibits. The judge also made a finding as to Mr. Adams' indebtedness in areas unrelated to his business.

After the entry of judgment, Mr. Adams moved, pursuant to Rule 52(b), for amended and additional findings of fact relative to his business' net receipts. He also moved for a new trial under Rules 59(a)(3) and 59(e). Following a hearing, the judge denied Mr. Adams' motions, finding that the additional evidence he sought to introduce had been available to him to present at the hearing on the permanent-alimony issue. The trial court did not err in this respect.

## III

Plaintiff's motion to dismiss this appeal is denied.

The judgment of the trial court awarding plaintiff permanent alimony and directing defendant to pay $218.34 per month on the second mortgage on the marital home is

Affirmed.

Judges EAGLES and GREENE concur.

Judge GREENE concurring.

I concur in the majority's decision and agree with the majority's statement that, "voluntary sexual intercourse by a spouse with a third party during the period of separation required by Section 50-6 is adultery as contemplated by Section 50-16.2(1), and is a ground for alimony." I write separately to dispel any implication that such adultery will give rise to an action for alimony even where the parties have executed a valid separation agreement waiving all alimony rights under Section 50-16.6(b) which states, "Alimony, alimony pendente lite, and counsel fees may be barred by an express provision of a valid separation agreement so long as the agreement is performed." N.C.G.S. Sec. 50-16.6(b) (1987); *see Crutchley v. Crutchley*, 306 N.C. 518, 524, 293 S.E. 2d 793, 797 (1982) (approving contractual release of alimony rights).

Section 50-16.6(b) permits spouses to agree privately that any ground for alimony—including adultery occurring before or after their agreement—shall not entitle the non-offending spouse to alimony so long as the agreement is performed. *See generally* S. Sharpe, *Divorce and the Third Party: Spousal Support, Private Agreements, and the State*, 59 N.C.L. Rev. 819, 844-47 (1981) (adultery will not affect support provisions of separation agreement absent specific contrary provision in agreement); *cf.* N.C.G.S. Sec. 31A-1(a), (b) (1984) (spousal rights in other marital contracts voided by adultery only if adultery has not been "condoned"). Adultery does not itself void a valid alimony waiver since the only possible purpose of Section 50-16.6(b) is to permit alimony waivers where grounds for alimony (such as adultery) may exist. Thus, the waiver provision of Section 50-16.6(b) complements the statutory bar of adultery under Section 50-16.6(a).

Furthermore, an otherwise valid separation agreement barring alimony under Section 50-16.6(b) does not run afoul of the requirement in Section 52-10(a) that all contracts between spouses must "[not] be inconsistent with public policy." N.C.G.S. Sec. 52-10(a) (1984) (may assert valid marital contract as plea in bar in any action). Section 50-16.6(b) is itself another of the Legislature's public policy "bright-lines" noted by the majority in this sensitive area. Section 50-10(a) presumably would *not* permit a plea in bar based on a spousal agreement which actually promoted any of the grounds for alimony specified in Section 50-16.2. N.C.G.S. Sec. 50-16.2(1)-(10) (1987). However, a valid release of one's legal right to alimony no more promotes the grounds giving rise to alimony than does the valid release of a wrongful death claim against a drunken motorist promote drunken driving. To interpret our statutes differently would bar any individual from agreeing to forego civil remedies where the State has enacted criminal sanctions.

Therefore, irrespective of whether the separation agreement is approved by the court, Section 50-16.6(b) and Section 52-10(a) permit the assertion of a valid contractual alimony waiver as a plea in bar in any action concerning alimony. Accordingly, while I agree with the majority's statement as written, I reject any implication that our courts may ignore a valid separation agreement waiving all alimony rights so long as the agreement is performed — even those rights arising from a spouse's predivorce adultery.