JANET SUE BROWN, Plaintiff,
v.
LARRY WINFRED BROWN, Defendant.
No. COA07-1475
Court of Appeals of North Carolina.
Filed September 16, 2008
This case not for publication
Cecilia C. Johnson for defendant-appellant.
No brief filed on behalf of plaintiff-appellee.
ELMORE, Judge.
Larry Winfred Brown (defendant) appeals from an order awarding alimony in favor of Janet Sue Brown (plaintiff). The trial court ordered defendant to pay plaintiff $1,500.00 per month in permanent alimony, provide health insurance for plaintiff, and pay plaintiff's attorney fees and costs. For the reasons stated below, we affirm the order.

I. Background
Plaintiff and defendant (collectively, the parties) were married on 8 December 1973 and separated on 11 November 2005. Two children were born of the marriage, both of whom were emancipated at the time of separation. On 14 November 2005, plaintiff filed a complaint seeking alimony, equitable distribution, post separation support, attorney fees, and a writ of possession to the marital home. Defendant filed an answer on 8 December 2005, which included a counterclaim for equitable distribution. The post separation support order was entered on 4 April 2007. The judgment of equitable distribution was entered on 28 June 2007. Plaintiff was awarded the marital home valued at $288,000.00, which at the time of separation had a mortgage balance of approximately $189,000.00 and a monthly payment of $1307.71.
The permanent alimony order was entered on 3 July 2007. The trial court ordered as follows:
BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:
The Plaintiff is entitled to recover from the Defendant the sum of $1500.00 per month as alimony beginning on the first day of August, 2007 and each month thereafter until such time as the Plaintiff dies, remarries, or this Judgment of Alimony is modified by this Court. That in addition thereto and as part of the alimony herein, the Defendant shall carry the Plaintiff on his health insurance policy through his employment or privately, if necessary for the physical, mental, dental, and vision needs of the Plaintiff.
The Defendant shall make health insurance cards available to the Plaintiff as soon as received to insure that the Plaintiff can provide the same to her medical care providers.
That the Plaintiff is entitled to recover attorney fees from the Defendant . . . .
The costs of this action are taxed to the Defendant.
Defendant filed and served his notice of appeal on 1 August 2007. Plaintiff did not file a brief.

II. Issues
The record contains twenty-five assignments of error, which collectively challenge twelve findings of fact and three conclusions of law . Defendant alleges error in the following findings of fact:
5. That the factors the Court has considered pursuant to N.C.G.S. 50-16.3A are as follows:
a. MARITAL MISCONDUCT:
(7) EMANCIPATED CHILDREN RESIDING WITH THE PLAINTIFF AND THE DEFENDANT: The fact that the emancipated children have temporarily resided with the Plaintiff and the Defendant has been considered by the Court and is not a factor effecting the award of alimony herein due to the contributions made by the son Heath to the living expenses in the home of the Plaintiff.
b. EARNINGS AND EARNING CAPACITIES:
(1) That Plaintiff's employment is with a physician's office. The Plaintiff has a degree as a certified nursing assistant; The Plaintiff earns $13.13 per hour and works from 30 to 45 hours per week; that per her financial affidavit filed June 28, 2007, she has a monthly gross income from all sources totaling $1,758.04; that after a deduction of taxes from said income and mandatory social security withholding and other taxes, she has the following available net monthly income: $1,424.43.
(2) That Plaintiff-Wife has the following reasonable and necessary monthly expenses: $3,220.96; these include the following: Individual: $832.00; Fixed: Shelter: 1,307.71; Utilities: $427.25; Transportation: $624.00; Other: none; Debt: $.00; that the other expenses listed in Plaintiff's affidavit filed hereon in the issue of the post separation support are deemed not to be reasonable at this time.
(3) That Defendant's employment is with Progress Energy as a salaried employee; that in 2006 he had a monthly gross income from all sources totaling $5,833.33; that for pay period #12 for check dated June 15, 2007, the Defendant had year to date gross earnings of $39,583.83 which divided by 24 weeks equals $1,649.32 per week X 4.33 weeks a month or $7,141.55 gross income per month for the first 24 weeks of 2007. That after a deduction of taxes from said income and mandatory social security withholding and other taxes, he has the following available net monthly income: $5,312.88 ($39,583.33 gross earnings year to date less $10,135.98 taxes equal $29,447.85 divided by 24 weeks equal $1,226.99 per week X 4.33 weeks equal $5,312.88 net income). In previous years, the Defendant has had greater income but this was due to additional work he was required to perform in hurricane areas to restore electrical power. The Court is not considering this additional income in the determination of alimony.
(5) That considering the difference between the income of Plaintiff ($1,424.43) and her reasonable and necessary monthly expenses ($3,220.96), she has a reasonable monthly need or deficit of $1,796.53; that Defendant, considering the difference of $2,670.88 between his monthly net income ($5,312.88) and his reasonable and necessary expenses ($2,642.00), has the ability to provide $1,500.00 per month to Plaintiff as post separation support to assist in meeting her needs.
f. STANDARD OF LIVING: upper middle class family[.]
* * *
h. ASSETS, LIABILITIES, AND DEBT SERVICE OF SPOUSES: Resolved in equitable distribution of assets and liabilities.
* * *
k. RELATIVE NEEDS OF THE SPOUSES: See above Paragraph b.(2) and (4);
* * *
m. ANY OTHER FACTOR RELATING TO ECONOMIC CIRCUMSTANCES OF THE PARTIES THE COURT FINDS JUST AND PROPER: The Defendant-Husband maintained health insurance on the Plaintiff-Wife during the marriage. During the separation of the parties the Defendant allowed the health coverage maintained by the Defendant on Plaintiff to be terminated. The Plaintiff sought and found other health insurance coverage which was not as comprehensive as the policy maintained through Progressive Energy by the Defendant's employment. The Plaintiff is in need of this health insurance from the Defendant as part of the award of alimony herein for her medical, health, nursing, and physician, dental, mental, and vision needs.
6. That based upon the foregoing factors, the Plaintiff-Wife is in need of financial support from the Defendant-Husband.
7. That based upon the foregoing factors, the Defendant-Husband is the supporting spouse of the Plaintiff-Wife.
8. Taking the foregoing factors into consideration, the duration of the alimony award is permanent until such time as the Plaintiff-Wife dies, remarries or this Order is modified or terminated upon a showing of a substantial change of circumstances.
Defendant also alleges error in the following conclusions of law:
BASED UPON THE FOREGOING FINDINGS OF FACT, THE COURT MAKES THE FOLLOWING:
CONCLUSIONS OF LAW:
2. That the Plaintiff-Wife is the dependent spouse of the Defendant-Husband as described in N.C.G.S. 50-16.A(2) in that she is substantially dependent upon the other spouse for his/her maintenance and support or is substantially in need of maintenance and support from the other spouse.
3. That the Defendant-Husband is the supporting spouse of the Plaintiff-Wife as described in N.C.G.S. 50.16.1A(5) in that she is actually substantially dependent for maintenance and support or from whom such spouse is substantially in need of maintenance and support.
4. That it is in the best interests of the dependent spouse that the supporting spouse pays the award of alimony until such time as the Plaintiff dies, remarries, or a substantial change of circumstances occurs justifying modification or termination of this Order.

III. Alimony Amount
Defendant argues that the trial court erred in making several findings of fact that it used to compute the alimony award. N.C. Gen. Stat. § 50-16.3A requires the trial court to "set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount, duration, and manner of payment." N.C. Gen. Stat. § 50-16.3A (c) (2007). Subsection (b) of the statute further requires the trial court to "consider all relevant factors" including, inter alia, the following: marital misconduct of either spouse; the relative earnings and earning capacities of the spouses; the ages of the spouses; the amount and sources of earned and unearned income of both spouses; the duration of the marriage; the extent to which the earning power, expenses, or financial obligations of a spouse are affected by the spouse's serving as custodian of a minor child; the standard of living of the spouses during the marriage; the assets, liabilities, and debt service requirements of the spouses, including legal obligations of support; and the relative needs of the spouses. N.C. Gen. Stat. § 50-16.3A (b) (2007); Hartsell v. Hartsell, ___ N.C. App. ___, ___, 657 S.E.2d 724, 727 (2008).
Defendant argues that the trial court failed to make specific findings of fact regarding each of the necessary statutory factors. In addition to setting forth reasons for its award, the trial court"shall make a specific finding of fact on each of the factors in subsection (b) of [N.C. Gen. Stat. § 50-16.3A] if evidence is offered on that factor." N.C. Gen. Stat. § 50-16.3A (c) (2007). The findings of fact must be sufficiently detailed to indicate that the trial court considered each of the relevant factors in its alimony determination. Vadala v. Vadala, 145 N.C. App. 478, 479, 550 S.E.2d 536, 537-38 (2001) (citations omitted).

A. Standard of Review
"Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion." Dodson v. Dodson, ___ N.C. App. ___, ___, 660 S.E.2d 93, 96 (2008) (quoting Bookholt v. Bookholt, 136 N.C. App. 247, 249-50, 523 S.E.2d 729, 731 (1999)). Our review of the trial court's findings are limited to "whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." Adkins v. Adkins, 82 N.C. App. 289, 292, 346 S.E.2d 220, 222 (1986) (internal citations omitted).

B. Income
Defendant contends that the trial court erred in calculating both parties' incomes. In findings of fact 5b(3) and 5b(1), the trial court determined that defendant had a gross monthly income of $7,141.55 and that plaintiff had a gross monthly income of $1,758.04. We disagree with defendant and find that the trialcourt's calculation of the parties' gross monthly incomes is supported by competent evidence.

1. Defendant's Income
In finding of fact 5b(3), the trial court provided a detailed explanation of how it calculated the gross monthly income of defendant. Defendant submitted a paycheck stub dated 15 June 2007, which indicated that he had gross year-to-date earnings of $39,583.83 through 13 June 2007. First, the trial court divided his year-to-date income of $39,583.83 by 24, the number of weeks defendant had worked in 2007.[1] That result, $1,649.32, was then multiplied by 4.33, the average number of weeks per month, which resulted in a gross monthly income of $7,141.55. Given this evidence, there are sufficient findings to support the trial court's calculation.

2. Plaintiff's Income
Defendant argues that the trial court erred in finding of fact 5b(1) when it calculated that plaintiff's gross monthly income was $1,758.04. Plaintiff had submitted a paycheck stub, which indicated that her gross year-to-date income through 16 June 2007 was $9,737.58. Plaintiff also submitted a financial affidavit in which she calculated her gross monthly income by using the same formula the trial court used to calculate defendant's gross monthly income. She divided her year-to-date gross earnings of $9,737.58 by 24, the number of weeks worked, and then multiplied that factor by 4.33, the average number of weeks per month, which resulted in a gross monthly income of $1,758.04. Her paycheck stub and financial affidavit provide evidence to support this amount and, therefore, we find no abuse of discretion.
Defendant also argues that the trial court erred in finding $1,758.04 as plaintiff's gross monthly income because that figure indicates that she worked 30.9 hours per week, when she in fact worked 40 hours per week. If plaintiff's gross monthly income of $1,758.04 is divided by 24 weeks, the result is that plaintiff has a gross weekly income of $405.73. However, if plaintiff's gross weekly income of $405.73 is divided by her hourly wage of $13.13, the result indicates that plaintiff worked an average of 30.9 hours per week.
Plaintiff testified that the number of hours she worked each week varied. When defendant's counsel asked plaintiff, "Is forty (40) hours available for you so-if you should choose it?," she replied, "That's what I've been doing." Defendant contends that this brief exchange provided "clear evidence" that plaintiff was working forty hours per week, and, therefore, the trial court's calculation was an abuse of discretion. Defendant's argument has no merit, as competent evidence exists to support the trial court's calculation of plaintiff's gross monthly income. It is a well-established rule that if the trial court's findings of fact are supported by competent evidence, the facts are "binding on the appellate courts even if the evidence would support a contrary finding." Kelly v. Kelly, 167 N.C. App. 437, 441, 606 S.E.2d 364, 368 (2004) (Kelly II). In addition to plaintiff's testimony that the number of hours she worked each week varied, her paycheck stub and financial affidavit also support the trial court's calculations. Therefore, the trial court did not err in its finding that plaintiff had a gross monthly income of $1,758.04.
Defendant also contends that the trial court erred in calculating plaintiff's gross monthly income because it failed to impute the fair market value of her basement apartment as income. Currently, the parties' emancipated son, Heath, is residing in the basement apartment of plaintiff's home. Plaintiff testified that she is not currently making their son pay rent, "so he can save his money and have money to start his own home and family." Defendant's argument that the trial court should have imputed $600.00, the fair market value of plaintiff's apartment, is rejected. It is well settled law that alimony is determined by a party's actual income, at the time of the alimony order. Megremis v. Megremis, 179 N.C. App. 174, 182, 633 S.E.2d 117, 123 (2006); see also Kowalick v. Kowalick, 129 N.C. App. 781, 787, 501 S.E.2d 671, 675 (1998); Wachacha v. Wachacha, 38 N.C. App. 504, 507-08, 248 S.E.2d 375, 377-78 (1978). The trial court is only permitted to consider a party's earning capacity if it finds that the party acted in bad faith. Megremis, 179 N.C. App. at 182, 633 S.E.2d at 123. Here, the trial court did not find bad faith on the part of plaintiff and, therefore, it did not err by failing to impute $600.00 to plaintiff's income.

C. Plaintiff's Reasonable and Necessary Expenses
Defendant argues that the trial court abused its discretion by determining in finding of fact 5b(2) that plaintiff had reasonable and necessary monthly expenses of $3,220.96. Defendant contends that because plaintiff's son, Heath, was living with her, the trial court should have reduced her reported shelter and living expenses and made factual findings about Heath's contributions to her household expenses. We disagree.
"[T]he determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge[.]" Harris v. Harris, ___ N.C. App. ___, ___, 656 S.E.2d 316, 320 (2008) (quoting Whedon v. Whedon, 58 N.C. App. 524, 529, 294 S.E.2d 29, 32 (1982)). Plaintiff testified that Heath was living with her and that the parties' other emancipated son was living with defendant. She testified that Heath "pretty well takes care of himself." She said that although Heath does not contribute towards the utility expenses, he pays the phone bill and buys groceries.
The trial court acknowledged in its order that it was aware of Heath living with plaintiff. In finding of fact 5a(7), the trial court stated:
The fact that the emancipated children have temporarily resided with the Plaintiff and the Defendant has been considered by the Court and is not a factor effecting the award of alimony herein due to the contributions made by the son Heath to the living expenses in the home of the Plaintiff.
(Emphasis added.) The trial court did consider evidence of Heath residing with plaintiff and, therefore, it was within its discretion to determine whether or not that evidence was relevant to plaintiff's reasonable and necessary expenses.
Defendant cites to Kelly II in support of his assertion that the trial court should have attributed half of plaintiff's mortgage and utility expenses to Heath. Defendant's reliance on Kelly II is misplaced. In Kelly II, we discussed that our Court had reversed the lower court's order in Kelly I because it had included defendant's payments for his emancipated daughters' vehicles in his reasonable and monthly expenses. See Kelly II, 167 N.C. App. at 439-40, 606 S.E.2d at 367; Kelly v. Kelly, 151 N.C. App. 748, 567 S.E.2d 468 (2002) (unpublished opinion) (Kelly I). Even though this Court is not bound by the holding in Kelly I[2], this case can be distinguished. Unlike the defendant in Kelly I, defendant here is not arguing that plaintiff included additional expenses for her emancipated son. See Kelly II, 167 N.C. App. at 439-40, 606 S.E.2d at 367. Instead, defendant argues that because Heath lives with plaintiff, the trial court should have reduced her reported mortgage and utility payments. However, defendant has failed to show that the trial court abused its discretion when it did not do so.
The trial court stated in finding of fact 5a(7) that it had considered evidence that Heath temporarily resided with plaintiff. Nevertheless, it found that plaintiff's housing and utility expenses, which she reported on her financial affidavit, were credible and, therefore, we will not hold to the contrary.

D. Award Exceeded Plaintiff's Reasonable Expenses
Defendant further contends that the trial court's award of $1,500.00 per month in alimony is improper because plaintiff testified that she had been able to meet her expenses with defendant's prior post-separation support payments of $1,200.00 per month. We disagree.
It is well settled that "it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial." Phelps v. Phelps, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994). Plaintiff did testify that she "barely" met her financial needs when she was receiving $1,200.00 each month in post-separation support payments. However, the trial court had sufficient evidence to support finding of fact 5b(5), which stated that "[plaintiff] has a reasonable monthly need or deficit of $1,796.53[.]" The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine de novo the weight and credibility to be given to evidence disclosed by the record on appeal. Megremis, 179 N.C. App. at 182-83, 633 S.E.2d at 123 (quoting Phelps, 337 N.C. at 357, 446 S.E.2d at 25 (quotations and citations omitted)). Plaintiff's financial affidavit itemized $3,320.96 in monthly expenses. After concluding that $100.00 of those expenses were not reasonable, the trial court found plaintiff's remaining expenses of $3,220.96, listed on her financial affidavit, to be credible. While defendant argues that the trial court should have found facts differently based on the evidence presented, we will not re-weigh the evidence, and defendant's argument as to this issue is rejected.

E. Assets, Liabilities, and Debt Services
Defendant also makes a generalized assertion that the trial court erred in finding of fact 5h, when it determined that the assets, liabilities, and debt services of the parties were "[r]esolved in equitable distribution of assets and liabilities." Defendant contends that the trial court's factual finding is insufficient because the it did not explain how any of those factors impacted its decision. We disagree.
N.C. Gen. Stat. § 50-16.3A(b) (10) does not require a recitation of the value of each of the assets, liabilities, and debts of the parties, but rather it calls for an assessment of the "relative assets and liabilities of the spouses and the relative debt service requirements of the spouses." N.C. Gen. Stat. § 50-16.3A(b) (10) (2007). In addition to the trial court's findings about the parties' income and expenses, the trial court also discussed in finding of fact 5n that plaintiff "cashed $25,000 of the retirement funds distributed to her and received approximately $18,000 in order to pay credit card debt and improve her financial position." Furthermore, the court also mentioned in fact 5b(4) that defendant made voluntary payments to his retirement plans and that those payments were not considered in its expense calculation. These factual findings are sufficient to support finding of fact 5h.
Defendant also asserts that the trial court erred because it discouraged defendant from finding out more information about plaintiff's estate in the following exchange:
DEFENDANT'S COUNSEL: . . . You could pay off the vast majority of that mortgage if you cashed out that retirement (inaudible); isn't that right? I mean you could reduce your monthly payment to a very small payment; isn't that right?
PLAINTIFF: Probably. I'm not sure exactly what I'm going to do with that money yet.
***
DEFENDANT'S COUNSEL: Your honor, I'm just asking  it goes to the state of the parties.
COURT: Well, its speculation about what she's going to do with the money. She obviously doesn't know now at this time and the estate is separate from the alimony issue so I'll sustain the objection. Please ask alimony questions.
***
DEFENDANT'S COUNSEL: Certainly, Your Honor. I'm asking just about her and I think that's one of the factors in the alimony.
COURT: It is a factor and she's said the estate is about $175,000.
***
COURT: Do you have any other statement or estate assets?
PLAINTIFF: No.
We reject defendant's argument. Defendant had all relevant information regarding plaintiff's estate in the 28 June 2007 judgment of equitable distribution. Plaintiff also testified that the estate was worth about $175,000.00. We do not find that the trial court abused its discretion when it restricted defendant from asking plaintiff about her future plans for her estate.

F. Standard of Living
Defendant assigns error to finding of fact 5f, which determines the parties' standard of living to be an "upper middle class family." Defendant argues that this factual findings is insufficient because the trial court did not explain how the parties met that standard of living. Defendant also argues that it was improper for the trial court to use the parties' marital home to determine their standard of living because the parties had resided there for less than two years. We reject both of these arguments.
As long as the trial court provides sufficient detail to satisfy a reviewing court that it has considered all relevant factors listed in N.C. Gen. Stat. § 50-16.3A (b), it is not required to set out specific findings for each factor. Rhew v. Rhew, 138 N.C. App. 467, 472, 531 S.E.2d 471, 474 (2000), rev. denied, 360 N.C. 648, 636 S.E.2d 810 (2006). The standard of living determination is an overall portrayal of the parties' lifestyle during their marriage. Barrett v. Barrett, 140 N.C. App. 369, 372-73, 536 S.E.2d 642, 645 (2000). Lower courts have previously considered the following factors when deciding parties' standard of living: the parties' incomes, their expenses, the type of home they lived in, the type of vacations they took, and their regular expenditures. See id.; Adams v. Adams, 92 N.C. App. 274, 279-80, 374 S.E.2d 450, 453 (1988). Although the parties' standard of living is more of a conclusion than a factual finding, the trial court here considered all of the relevant factors and made sufficient findings of fact to support its determination.
In addition to making factual findings about each party's housing expenses, the trial court made other findings of facts relevant to their marital standard of living. Findings of Fact 5b(1)-5b(5) describe each party's employment history, their income, and their reasonable and necessary expenses. Finding of Fact 5a(1) discusses their expenditures and expenses during their marriage, when it included the following information: the defendant "required plaintiff to use her earnings for groceries [and] lake trips," plaintiff "maintain[ed] her own checking account . . . and credit card accounts," and defendant "obtained a signature on [a loan] . . . to obtain [a] motorcycle." Finding of Fact 5a(4) gave examples of the parties' leisure activities and other expenditures when it stated that defendant spent "Wednesday nights at the Eagle's Nest at Ramada Inn, Thursday nights at Hooters," and that on "Friday nights the defendant attended ballgames or the parties would go to the lake for the weekend." We conclude that these findings of fact are sufficient for an overall portrayal of the parties' standard of living. In light of the numerous other factual findings supporting the award of alimony to plaintiff, we do not find an abuse of discretion.

G. Defendant's Standard of Living Decreased
Defendant contends that the trial court abused its discretion because after the alimony order, plaintiff's standard of living remained the same, while defendant's standard of living substantially decreased. We disagree and find no abuse of discretion.
Defendant compares his home to plaintiff's home to support his argument. Plaintiff is currently living in a 2,750 square foot, two-story home on an acre of land, with a fair market value of $288,000.00 and a mortgage payment of $1,307.07. Defendant asserts that his standard of living has significantly decreased because he lives in a 12' x 65' trailer built in 1980 which has "holes in the walls, filthy carpets, a rotting bathroom floor, . . . a leaky shower," and a monthly rent payment of $300.00.
After collectively viewing all relevant factors, this Court does not find a substantial difference between defendant's and plaintiff's standards of living. As discussed above, while the trial court did make findings of fact about the parties' housing expenses, housing is only one of several factors relevant to this determination. In its findings of fact, the trial court discussed many other factors relevant to its standard of living determination such as the parties' income, their expenses, their current estate assets, and their common expenditures during their marriage. In finding of fact 5b(5), the trial court found that defendant has a monthly surplus of $2,670.88. Even after defendant pays plaintiff $1,500.00 in alimony, he still has a surplus of $1,170.00. On the other hand, the trial court found that Plaintiff has a monthly deficit of $1,796.53. Even after Plaintiff receives her $1,500.00 monthly alimony payment, she still has a deficit of $296.00. This hardly supports defendant's contention that plaintiff's standard of living is much higher than his and, therefore, we do not find that the trial court abused its discretion. We hold that the trial court made sufficient findings of fact to support its conclusions of law, and we therefore affirm the amount of the alimony award.

IV. Determination of Dependent and Supporting Spouse
In North Carolina, a party is entitled to alimony if three requirements are satisfied: (1) that party is a dependent spouse; (2) the other party is a supporting spouse; and (3) an award of alimony would be equitable under all of the relevant factors. N.C. Gen. Stat. § 50-16.3A (a) (2007); Barrett, 140 N.C. App. at 371, 536 S.E.2d at 644. Defendant challenges the trial court's findings of fact and conclusions of law classifying him as the supporting spouse and plaintiff as the dependent spouse. We hold that the findings of fact are sufficiently detailed to support the conclusions of law that plaintiff is the dependent spouse and defendant is the supporting spouse.

A. Dependent Spouse
To be a dependent spouse, one must be either "actually substantially dependent upon the other spouse for his or her maintenance and support or . . . substantially in need of maintenance and support from the other spouse." N.C. Gen. Stat. § 50-16.1A (2) (2007). A spouse is "actually substantially dependent" if he or she is currently unable to meet his or her own maintenance and support. Williams v. Williams, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980). A spouse is "substantially in need of maintenance" if he or she will be unable to maintain his or her accustomed standard of living without financial contribution from the other. Id. at 181-82, 261 S.E.2d at 855.
A deficit between a party's income and expenses supports a trial court's classification of that party as dependent. See Barrett, 140 N.C. App. at 372, 536 S.E.2d at 645 (affirming finding of dependency because the plaintiff's expenses exceeded her income); see also Rhew v. Felton, 178 N.C. App. 475, 631 S.E.2d 859, disc. rev. denied, 360 N.C. 648, 636 S.E.2d 810 (2006) (finding that the defendant was the dependent spouse because her reasonable needs exceeded her income by approximately $1,400.00). Here, the trial court found that plaintiff had $1,424.23 in net monthly income, but had $3,220.96 in monthly expenses. Thus, the fact that plaintiff has an income-expenses deficit of $1,796.53 each month supports the determination that she will be unable to meet her needs in the future without financial contribution from defendant.

B. Supporting Spouse
To be a supporting spouse, one must be the spouse upon whom the other spouse is either "substantially dependent for maintenance and support" or "substantially in need of maintenance and support." N.C. Gen. Stat. § 50-16.1A (5) (2007). In finding of fact 5b(5), the trial court found that due to defendant's income-expenses monthly surplus of $2,670.88, he "has the ability to provide $1500.00 per month to Plaintiff . . . to assist in meeting her needs." We hold that the alimony order contained sufficient findings of fact to clearly support the trial court's conclusions of law classifying plaintiff as the dependent spouse and defendant as the supporting spouse.

V. Duration of the Alimony Award
Defendant argues that the trial court erred because it did not explain why plaintiff was awarded alimony permanently. "[A] trial court's failure to make any findings regarding the reasons for the amount, duration, and the manner of payment of alimony violates [N.C. Gen. Stat. § 50-16.3A (c)]." Fitzgerald v. Fitzgerald, 161 N.C. App. 414, 421, 588 S.E.2d 517, 522-23 (2003). Here, the trial court states that it considered all of the fifteen factors enumerated in N.C. Gen. Stat. § 50-16.3A in making its determinations. After reviewing the alimony order in its entirety, we find that the trial court provided sufficient findings of fact and conclusions of law to support the permanent duration of the alimony award. Decisions about the amount and duration of alimony are made in the trial court's discretion, and it is not required to make findings about the weight and credibility it assigned to evidence before it. Hartsell, ___ N.C. App. at ___, 657 S.E.2d at 730. As discussed above, the alimony order contains several findings of fact regarding each parties' income, expenses, and standard of living. All of these factors are relevant to the duration of the alimony award and therefore we cannot find that the trial court abused its discretion. Accordingly, we affirm the award of permanent alimony to the plaintiff.

VI. Health Insurance
Defendant asserts that there are insufficient facts to support the order requiring defendant to provide health insurance for plaintiff. We find that this order is sufficiently supported by the trial court's findings of fact and conclusions of law.
In its findings of fact, the trial court specifically explained its reasons for ordering defendant to provide plaintiff with health insurance. Finding of Fact 5m states that "[defendant] maintained health insurance on [plaintiff] during the marriage." The trial court then explained that when defendant's health insurance for plaintiff was terminated, "plaintiff sought and found other health insurance coverage which was not as comprehensive as the policy maintained through Progressive Energy by [defendant's] employment." Furthermore, the findings of fact about the parties' incomes and expenses provide additional evidence that plaintiff does not have the resources to pay for an additional expense, such as health insurance. Given these factual findings, we do not find an abuse of discretion.

VII. Costs
Although defendant contends that the trial court erred when it did not make any findings of fact or conclusions of law regarding its order to tax the costs of the action to defendant, he makes no argument as to why the order is improper. Rule 28(a) limits appellate review to issues defined clearly and supported by arguments and authorities. N.C.R. App. P. 28(a) (2007). The rule provides that "[t]he function of all briefs required or permitted by these rules is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. Review is limited to the questions so presented." Id. (emphasis added). Because defendant has failed to argue this assignment of error, he has waived his right to appellate review of this issue.

VIII. Conclusion
After careful review of the record, we find that the findings of fact are sufficiently detailed to support the subsequent conclusions of law. We affirm the alimony order.
Affirmed.
Judges WYNN and ARROWOOD concur.
Report per Rule 30(e).
NOTES
[1] Defendant contends that the trial court erred when it divided his year-to-date income by twenty-four, arguing that there are twenty-five weeks from 1 January 2007 to 13 June 2007. Defendant is incorrect. There are twenty-four weeks during this time period and, therefore, the trial court did not err in its calculation.
[2] Pursuant to N.C.R. App. P. 30(e), our unpublished decisions do not constitute controlling legal authority. N.C.R. App. P. 30(e)(3) (2007).